1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE SOUSA, et al., | Case No. 1:20-cv-00500-ADA-EPG |
| Plaintiffs, | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| WALMART, INC., et al., | (ECF No. 52) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

George Sousa and Martha Castro (collectively, "Plaintiffs") are proceeding with a first amended consolidated complaint ("FAC") asserting various putative class and representative claims against Walmart Inc. and Wal-Mart Associates, Inc. (collectively, "Defendants") for violating California's labor laws. (ECF No. 51.) Before the Court is Defendants' motion to dismiss the FAC. (ECF No. 52.) For the reasons described below, the undersigned recommends that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiffs be granted leave to file a second amended consolidated complaint.

## I.    SUMMARY OF ALLEGATIONS

The FAC alleges as follows:

George Sousa ("Plaintiff Sousa") worked at the Hanford Walmart store as a non-exempt employee in various positions, including associate, overnight support manager, and other titles, from 2014 through October 2017. During that time, Plaintiff regularly worked in excess of forty

1   hours per week. Plaintiff regularly worked more than forty hours per week during the retail

2   "busy season," leading up to December 25th. After October 2017, Plaintiff was promoted to

3   assistant manager and retains that title to the present day.

4          Martha Castro ("Plaintiff Castro") worked as a "greeter" at Walmart's retail location in

5   Roseville, California from approximately July 8, 2006, until August 10, 2019. During this time,

6   Plaintiff Castro routinely worked more than eight hours per day. Plaintiff Castro was further

7   required to wait in line off-the-clock for security checks each day at the end of each shift.

8          The proposed Class members are all people who are or who have been employed by

9   Defendants as hourly non-exempt employees, including but not limited to associates, cashiers,

10  stockers, attendants, pharmacists, custodians, security guards, and other hourly and non-exempt

11  employees throughout the State of California within the four years preceding the filing of the

12  FAC. The proposed Night Shift Manager Subclass are all people who are or who have been

13  employed by Defendants as hourly, non-exempt overnight support managers and/or night

14  managers, or other positions with similar job duties, throughout the State of California within the

15  four years preceding the filing of the FAC.

16         Pursuant to a uniform policy originated by Defendants and used across all Defendants'

17  facilities throughout California, all hourly employees are subject to daily bag searches for

18  potential contraband when they leave the premises. After Plaintiffs and other similarly situated

19  employees "clock out," they would retrieve their belongings from their locker, go to the exit

20  where customers leave the store,[1] and wait in line as customers show receipts that are scanned.

21  When employees approach security, they give their name, employee identification number, and

22  then exit the building. Plaintiffs allege that such daily security checks took between two to ten

23  minutes, or sometimes even longer, depending on the number of people in line and persons

24  checking bags and or receipts. Thus, at the discretion and control of Defendants, Plaintiffs and

25  other aggrieved employees were and are required to wait in line for security checks for each day

26  at the end of each shift. The time waiting in the security line was uncompensated by Defendants.

27

28  [1] Plaintiffs allege that there were no separate security check locations for employees, and all employees had to use
    the security checkpoints that are open to the public leaving the store.

2

1    As a result of Defendants' uniform security check policy, Plaintiffs and Class members

2    were systematically denied minimum wage for all time worked, as well as required overtime pay.

3    For example, Plaintiff Sousa was regularly scheduled to work eight hours a day, five days per

4    week. Plaintiff Sousa was required to wait in security check lines for five to ten minutes, every

5    shift. As a result, each week Sousa worked for Defendants between 2014 and October of 2017,

6    Sousa (1) typically worked on the clock at least forty hours a week; and (2) worked off-the-clock

7    twenty-five to fifty minutes per week. Because those weekly twenty-five to fifty minutes of time

8    spent in security checks were all in excess of eight hours in a day and forty hours in a week,

9    Sousa was denied twenty-five to fifty minutes of overtime pay each week between the beginning

10   of his employment in 2014 to October 2017.

11   Similarly, the time Plaintiff Castro spent off-the-clock during mandatory security checks

12   typically resulted in overtime violations. Plaintiff Castro frequently worked eight-hour shifts, on

13   the clock. For each one of these eight-hour shifts, Plaintiff Castro was required to participate in

14   an off-the-clock security check for two to ten minutes. As a result, all time spent off-the-clock

15   during these mandatory security checks necessarily resulted in Plaintiff Castro working in excess

16   of eight hours in a day and entitled her to overtime pay for every shift she worked on the clock

17   eight hours in a day. In sum, every time Castro worked a shift of at least eight hours, Castro

18   incurred at least two to ten minutes of uncompensated overtime.

19   From approximately June 2016 to March 2017, Plaintiff Sousa was a non-exempt,

20   hourly-paid overnight support manager ("night manager") at the Walmart store in Hanford,

21   California. Walmart and Sam's Club stores utilize a proprietary and common and universal

22   timekeeping system throughout all of their stores that hourly workers use to clock in and clock

23   out. When non-exempt, hourly-paid night shift managers take their unpaid thirty-minute meal

24   periods, Defendants' supervisors instruct these workers not to manually clock out for their meal

25   period, but instead instruct night shift managers to follow the  timekeeping system's automated

26   prompts to notate their meal periods. When night shift managers notate a meal period according

27   to Defendants' instructions, the time clock deducts thirty minutes for a meal period, plus an

28   additional thirty minutes from the night shift managers' time records. Defendants' policies and

1    practices, which are implemented throughout Defendants' store, result in night shift managers

2    losing an extra thirty minutes from their shifts for every shift worked.

3       As a matter of policy, Defendants also require Plaintiffs and Class members to remain on

4    duty during their scheduled shifts, including during rest breaks. Defendants do not compensate

5    Class members for work performed during rest periods and do not provide Class members

6    premium pay for missed rest breaks. Defendants' supervisors and managerial workers know and

7    are aware that non-exempt, hourly workers routinely work through rest breaks and are not

8    provided with premium pay for the missed rest breaks.

9       Because these meal and rest periods were on duty, interrupted, or missed altogether for

10    every shift that Plaintiffs and Class members worked in excess of three and one-half hours, they

11    were denied at least one off-duty, uninterrupted ten-minute rest period. For every shift that

12    Plaintiffs and Class members worked in excess of five hours in a day, they were denied an off-

13    duty, uninterrupted thirty-minute meal period. For every shift that Plaintiffs and Class members

14    worked in excess of six hours, they were denied a second off-duty, uninterrupted ten-minute rest

15    period. Meal and rest break premium pay was improperly withheld, and for uncompensated meal

16    periods, this results in additional thirty minutes of uncompensated work time each shift. Because

17    Plaintiffs and Class members routinely work in excess of eight hours in a day and forty hours in

18    a week, this uncompensated meal time results in both overtime and minimum wage violations.

19       As just one of countless examples, during the two weeks between January 7, 2017, and

20    January 20, 2017, Plaintiff Sousa worked ten shifts, each of which were in excess of 7 hours –

21    sufficient length to entitle him to one meal break and two rest breaks each shift. Because Plaintiff

22    Sousa was on duty during those breaks and those breaks were subject to interruption at any time,

23    Plaintiff experienced ten meal break violations and twenty rest break violations during those two

24    weeks.

25       Plaintiffs allege that Defendants employ, or employed, thousands of people similarly

26    situated to Plaintiffs during the four-year period prior to the filing of the FAC. Defendants'

27    method of paying Plaintiffs and Class members was willful and not based on a good faith and

28    reasonable belief that its conduct complied with California law. Defendants routinely failed to

1   maintain true and accurate records of the hours worked by Class members. In particular,

2   Defendants failed to record hours that Plaintiffs and Class members work while off the clock.

3   Defendants' conduct is willful, is carried out in bad faith, and causes significant damages to non-

4   exempt hourly employees.

5       The FAC raises the following causes of action: (1) failure to pay overtime wages

6   pursuant to California Labor Code section 510; (2) failure to pay minimum wages pursuant to

7   California Labor Code sections 1182.11, 1182,12, 1194, 1197, and 1197.1; (3) failure to

8   authorize and permit and/or make available rest periods pursuant to California Labor Code

9   sections 226 and 512; (4) waiting time penalties pursuant to California Labor Code sections 201–

10  203; (5) violation of California Business and Professions Code section 17200 *et seq.*; (6)

11  statutory penalties pursuant to California Labor Code section 2698 *et seq.* (ECF No. 51.)

12  **II.   PROCEDURAL HISTORY**

13      On March 24, 2020, Plaintiff Castro filed her initial complaint in Placer County Superior

14  Court. (Complaint, Castro v. Walmart Inc., No. 2:20-cv-00928 (E.D. Cal. May 6, 2020)

15  ("Castro"), ECF No. 1-2.) On May 6, 2020, Walmart removed the matter to the Sacramento

16  Division of the United States District Court for the Eastern District of California. (Castro, ECF

17  No. 1.) On May 22, 2020, Plaintiff Castro filed a first amended class action complaint. (Id., ECF

18  No. 8.) On June 5, 2020, Walmart filed a motion to dismiss Castro's claim for inaccurate wage

19  statements under California Labor Code section 226 on the ground that it was derivative of her

20  claims for off-the-clock work and thus sought an improper double recovery. (Id., ECF No. 9.) On

21  August 17, 2020, the Court granted Walmart's motion to dismiss and dismissed Plaintiff Castro's

22  failure to provide accurate wage statements claim with prejudice. (Id., ECF No. 15.)

23      Meanwhile, on April 7, 2020, Plaintiff Sousa filed his initial complaint against

24  Defendants in this Court. (ECF No. 1.) On June 15, 2020, Defendants filed an answer. (ECF No.

25  7.) On April 29, 2021, Plaintiff Sousa and Defendants filed a stipulation to consolidate his action

26  with Castro. (ECF No. 27.) On May 7, 2021, the parties in Castro stated they agreed to

27  consolidation. (Castro, ECF No. 26.) On May 11, 2021, the Court consolidated the cases and

28  Plaintiffs were granted leave to file a consolidated complaint. (ECF No. 28.)

1   On May 12, 2021, Plaintiffs filed a consolidated complaint. (ECF No. 29.) On June 9,

2   2021, Defendants filed a motion to partially dismiss the consolidated complaint. (ECF No. 37.)

3   On August 12, 2021, the parties filed a stipulation for Defendants to withdraw the motion to

4   dismiss and for Plaintiffs to file an amended consolidated complaint. (ECF No. 49.)

5   On August 20, 2021, Plaintiffs filed a first amended consolidated complaint. (ECF No.

6   51.) On September 3, 2021, Defendants filed the instant motion to dismiss. (ECF No. 52.)

7   Plaintiffs have filed an opposition, and Defendants have filed a reply. (ECF Nos. 54, 55.) On

8   September 12, 2022, the motion to dismiss was referred to the undersigned. (ECF No. 59.)

9   **III.   LEGAL STANDARDS**

10      **A.  Motion to Dismiss**

11   In considering a motion to dismiss, the Court must accept all allegations of material fact

12   in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex

13   Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the

14   light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on

15   other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813,

16   816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's

17   favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must

18   be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler,

19   627 F.3d 338, 342 (9th Cir. 2010).

20   A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter

21   jurisdiction. See Fed. R. Civ. P. 12 (b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or

22   factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing White v.

23   Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the

24   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

25   Safe Air, 373 F.3d at 1039. "By contrast, in a factual attack, the challenger disputes the truth of

26   the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

27   A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

28   complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short

1    and plain statement of the claim showing that the pleader is entitled to relief" in order to "give

2    the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell

3    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

4    47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant

5    is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

6          The first step in testing the sufficiency of the complaint is to identify any conclusory

7    allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action,

8    supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S.

9    at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

10   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

11   will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

12         After assuming the veracity of all well-pleaded factual allegations, the second step is for

13   the court to determine whether the complaint pleads "a claim to relief that is plausible on its

14   face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6)

15   standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff

16   "pleads factual content that allows the court to draw the reasonable inference that the defendant

17   is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

18   The standard for plausibility is not akin to a "probability requirement," but it requires "more than

19   a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

20                     **B.  Leave to Amend**

21         Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

22   15(a)(2). "[P]ublic policy strongly encourages courts to permit amendments," and "[t]he policy

23   of allowing amendments 'is to be applied with extreme liberality.'" Waldrip v. Hall, 548 F.3d

24   729, 732 (9th Cir. 2008) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712

25   (9th Cir. 2001)). "However, 'liberality in granting leave to amend is subject to several

26   limitations.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th

27   Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). A

28   court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or

1  dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments
2  previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment."
3  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in
4  original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

5       "Not all of the factors merit equal weight." Eminence Capital, LLC v. Aspeon, Inc., 316
6  F.3d 1048, 1052 (9th Cir. 2003). "Futility of amendment can, by itself, justify the denial of a
7  motion for leave to amend," Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995), but
8  "[u]ndue delay by itself is insufficient to justify denying leave to amend," United States v.
9  United Healthcare Ins. Co., 848 F.3d 1161, 1167 (9th Cir. 2016). "[I]t is the consideration of
10 prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at
11 1052. "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists
12 a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

13 **IV.    DISCUSSION**

14      **A.  UCL Claim**

15      Plaintiffs' Fifth Cause of Action is for violation of California's Unfair Competition Law
16 ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus.
17 & Prof. Code § 17200. (ECF No. 51 at 18.)[2] Defendants move to dismiss Plaintiffs' UCL claim
18 because Plaintiffs: (1) fail to allege an inadequate remedy at law, (2) lack standing for injunctive
19 relief, and (3) cannot recover penalties under the UCL. (ECF No. 52 at 13–16.)

20          1.   Allegation of Inadequate Remedy at Law

21      The Ninth Circuit has held that "the traditional principles governing equitable remedies in
22 federal courts, including the requisite inadequacy of legal remedies, apply when a party requests
23 restitution under the UCL . . . in a diversity action." Sonner v. Premier Nutrition Corp., 971 F.3d
24 834, 844 (9th Cir. 2020). Thus, a plaintiff "must establish that she lacks an adequate remedy at
25 law before securing equitable restitution for past harm under the UCL," and in Sonner, the Ninth
26 Circuit found that the plaintiff "fails to make such a showing" because, *inter alia*, "the operative
27 complaint does not allege that Sonner lacks an adequate legal remedy." Id. (citing O'Shea v.

28 _____
[2] Citations refer to the pagination assigned by the CM/ECF system.

1   Littleton, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed

2   because it did not plead "the basic requisites of the issuance of equitable relief" including "the

3   inadequacy of remedies at law")).

4          Defendants rely on Sonner in arguing that Plaintiffs fail to state a claim for equitable

5   relief under the UCL because "the FAC fails to plead that Plaintiffs lack an adequate remedy at

6   law." (ECF No. 52 at 14.) In the opposition, Plaintiffs acknowledge that "[i]t is true that in

7   recovering damages through an equitable claim for relief, a plaintiff must show an inadequate

8   remedy at law," but argue that "this is a merits issue, not a pleading one." (ECF No. 54 at 10.)

9   Plaintiffs assert that "courts routinely confirm under identical circumstances, as a pleading

10  matter, plaintiffs are entitled to seek remedies under the UCL and Labor Code as alternative

11  remedies" and provide a string of citations. (Id.) Plaintiffs do not address Sonner in the

12  opposition, and all but one of the cases cited in support of their argument were decided before

13  Sonner.

14         "[W]hether a UCL claim is pleaded as the sole or an alternative remedy, it must be

15  pleaded adequately. Therefore, in order to adequately assert a claim for equitable restitution

16  under the UCL in federal court, the complaint must allege that [plaintiff] lacks an adequate legal

17  remedy." Taylor v. Sam's W., Inc., No. CV 20-5380 DSF (JCX), 2020 WL 12947974, at *4

18  (C.D. Cal. Oct. 7, 2020). Here, the FAC does not allege that Plaintiffs lack an adequate legal

19  remedy. Accordingly, the undersigned recommends that Defendants' motion to dismiss be

20  granted on this ground and Plaintiffs' Fifth Cause of Action be dismissed with leave to amend.

21  See Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-

22  letter law that a district court must give plaintiffs at least one chance to amend a deficient

23  complaint, absent a clear showing that amendment would be futile."); Taylor, 2020 WL

24  12947974, at *4 (dismissing UCL claim for failing to allege lack of adequate legal remedy with

25  leave to amend).

26              2.   Injunctive Relief

27         In the FAC, Plaintiffs seek injunctive relief under the UCL. (ECF No. 51 at 19, ¶ 98.)

28  Defendants assert that Plaintiffs lack standing to pursue injunctive relief under the UCL, arguing

that: (1) Plaintiff Castro is a former employee of Walmart and that past employees generally lack standing to pursue injunctive relief against their former employers; and (2) "there is no reasonable threat that Plaintiff Sousa – an exempt salaried employee – will suffer future minimum wage, overtime, or rest break violations that can potentially pertain only to non-exempt hourly employees." (ECF No. 52 at 15–16; ECF No. 55 at 10.) In the opposition, Plaintiffs argue that Defendants "conflate[] concepts of 'standing' to assert a claim, with class certification requirements that inquire if a plaintiff's claims and circumstances are sufficiently *typical* of putative class members." (ECF No. 54 at 15.)

> A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). In other words, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (internal quotation marks and alteration omitted).

Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018). "A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction." Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 864 (9th Cir. 2017). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of [a] proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiff Castro is a former employee of Walmart. The Ninth Circuit has held that a "former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief." Bayer, 861 F.3d at 865 (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 364–65 (2011); Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1036–37 (9th Cir. 2006)). Plaintiffs have not provided a reasonably certain basis for concluding that Plaintiff

1   Castro has some personal need for prospective relief, and moreover, "several district courts . . .

2   have concluded that a former employee lacks standing to seek prospective injunctive relief on

3   behalf of a putative class containing both former and current employees." Ramirez v. Manpower,

4   Inc., No. 5:13-CV-2880-EJD, 2014 WL 116531, at *7 (N.D. Cal. Jan. 13, 2014) (listing cases).

5           Since 2017, Plaintiff Sousa has been an exempt salaried employee who is not subject to

6   minimum wage, overtime, or rest break regulations. (ECF No. 55 at 9–10.) The Ninth Circuit has

7   held that "[a] plaintiff who cannot reasonably be expected to benefit from prospective relief

8   ordered against the defendant has no claim for an injunction." Bayer, 861 F.3d at 864. Plaintiffs

9   have not demonstrated how Plaintiff Sousa will personally benefit from prospective relief

10  ordered against Defendants regarding minimum wage, overtime, or rest break violations.

11          "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may

12  not represent a class seeking that relief. Any injury unnamed members of this proposed class

13  may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to

14  the injunctive relief they seek." Hodgers-Durgin, 199 F.3d at 1045. "Thus, to the extent Plaintiff

15  attempts to rely on the unnamed putative class members' potential future harm as the basis for

16  . . . injunctive relief, that argument fails." Wolf v. Hewlett Packard Co., No. CV 15-01221-BRO

17  (GJSx), 2016 WL 8931307, at *9 (C.D. Cal. Apr. 18, 2016) (internal citation omitted) (citing

18  Hodgers-Durgin, 199 F.3d at 1045). See also Hoffman v. Ford Motor Co., No. 8:20-cv-0846-

19  JLS-KES, 2021 WL 3265010, at *10–11 (C.D. Cal. Mar. 31, 2021) (granting motion to dismiss

20  equitable claims for relief because "allegations demonstrate a threat of future injury to potential

21  class members, not the named plaintiffs; Plaintiffs have failed to allege that *they* are at risk of

22  future injury"); In re Nexus 6P Prod. Liab. Litig., 293 F. Supp. 3d 888, 954 (N.D. Cal. 2018)

23  ("However, a plaintiff cannot seek injunctive relief on behalf of the public unless he is

24  individually entitled to such relief. Because the Court has presently determined that the

25  California Plaintiffs have not adequately pled standing to seek injunctive relief, their prayer for

26  injunctive relief on behalf of the entire class must also fail." (internal citations omitted));

27  Freeman v. ABC Legal Servs., Inc., 877 F. Supp. 2d 919, 927 (N.D. Cal. 2012) (holding that

28  plaintiffs lacked standing to seek injunctive relief because "Plaintiffs' current allegations

1    establish only that [the defendant] will (allegedly) harm many people, but not necessarily that it

2    will harm *Plaintiffs* again" (emphasis in original)); Sanchez v. U.S. Off. of Border Patrol, No.

3    12-5378 BHS, 2012 WL 3715719, at *3 (W.D. Wash. Aug. 27, 2012) ("In order to receive

4    injunctive relief, a plaintiff must make an additional showing that they have standing. The

5    equitable remedy is unavailable absent a showing of irreparable injury[.] . . . Further, the alleged

6    injuries must be to the named class members because 'injunctive relief is not available based on

7    alleged injuries to unnamed members of a proposed class.'" (some internal quotation marks and

8    citations omitted) (quoting Hodgers-Durgin, 199 F.3d at 1045)).

9        Accordingly, the undersigned recommends that Defendants' motion to dismiss be granted

10   on this ground and Plaintiffs' Fifth Cause of Action be dismissed with leave to amend. See

11   Warth v. Seldin, 422 U.S. 490, 501–02 (1975) (noting that with respect to "a motion to dismiss

12   for want of standing," "it is within the trial court's power to allow or to require the plaintiff to

13   supply, by amendment to the complaint or by affidavits, further particularized allegations of fact

14   deemed supportive of plaintiff's standing"); Greenpeace, Inc. v. Walmart Inc., No. 21-CV-

15   00754-MMC, 2022 WL 591451, at *2 (N.D. Cal. Feb. 3, 2022) ("[W]here a plaintiff fails to

16   allege facts to support Article III standing, the complaint ordinarily is subject to dismissal, albeit

17   with leave to amend.").

18                3.   Recoverability Under the UCL

19       Defendants assert that the FAC solely seeks penalties for Defendants' alleged failure to

20   provide rest periods and accurate wage statements. Defendants contend, however, that "penalties

21   are not 'restitution' recoverable under the UCL, and Plaintiffs' UCL claim should be dismissed

22   insofar as it seeks to recover penalties for rest period and wage statement violations." (ECF No.

23   52 at 16.) In the opposition, Plaintiffs argue that meal and rest period premium wages are wages,

24   not penalties, and thus are recoverable under the UCL. (ECF No. 54 at 12–14.) Plaintiffs did not

25   address Defendants' arguments regarding accurate wage statements, and Defendants did not

26   address this issue in their reply.

27   ///

28   ///

1           **a.  Rest Periods**

2           Plaintiffs allege that Defendants committed acts of unfair competition as defined by the

3   UCL by engaging in violations of California Labor Code sections 226.7 and 512 regarding rest

4   periods. (ECF No. 51 at 18, ¶ 95.) "Section 226.7 of the California Labor Code provides that an

5   employer who fails to provide legally compliant meal and rest breaks must pay the employee one

6   additional hour of pay at the employee's regular rate of compensation." Yeomans v. World Fin.

7   Grp. Ins. Agency, Inc., No. 19-cv-00792-EMC, 2022 WL 844152, at *8 (N.D. Cal. Mar. 22,

8   2022). "[U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and

9   restitution.'" Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003) (first

10  alteration added) (quoting Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel., 20 Cal. 4th 163,

11  179 (1999)). "[O]rders for payment of wages unlawfully withheld from an employee are . . . a

12  restitutionary remedy authorized by [the UCL]." Cortez v. Purolator Air Filtration Prods. Co., 23

13  Cal. 4th 163, 177 (2000). Therefore, the issue is whether the additional hour of pay mandated by

14  section 226.7 is a wage and thus, restitutionary and recoverable under the UCL.

15          "The California Supreme Court has not addressed whether Section 226.7 pay is

16  recoverable under the UCL," Yeomans, 2022 WL 844152, at *8, but the two pertinent California

17  Supreme Court cases are Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2002),

18  and Kirby v. Immoos Fire Protection, Inc., 53 Cal. 4th 1244 (2012). In Murphy, after considering

19  the language, legislative history, and purpose of section 226.7, the California Supreme Court

20  held that "the 'additional hour of pay' is a premium wage intended to compensate employees, not

21  a penalty," for purposes of determining the applicable limitations period. 40 Cal. 4th at 1114. In

22  Kirby, the California Supreme Court held that "a section 226.7 claim is not an action brought for

23  nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." 53 Cal.

24  4th at 1257.

25          "Following [Murphy and Kirby], district courts have diverged on whether premium

26  wages paid for meal and rest periods are 'wages' under other provisions of the Labor Code, and

27  furthermore, whether they are wages recoverable as restitution for purposes of the UCL." Harper

28  v. Charter Commc'ns, LLC, No. 2:19-cv-00902-WBS-DMC, 2020 WL 916877, at *4 (E.D. Cal.

1   Feb. 26, 2020) (listing cases). The California Supreme Court specifically stated that <u>Kirby</u> "is not

2   at odds with our decision in <u>Murphy</u>" because "[t]o say that a section 226.7 remedy is a wage . . .

3   is not to say that the *legal violation* triggering the remedy is nonpayment of wages." <u>Kirby</u>, 53

4   Cal. 4th at 1257 (emphasis in original). Accordingly, the Court relies on <u>Murphy</u>'s holding that

5   "the 'additional hour of pay' is a premium wage intended to compensate employees, not a

6   penalty." 40 Cal. 4th at 1115.

7           Having found that section 226.7 rest period premiums are wages, the Court now turns to

8   whether they are recoverable under the UCL. "[O]rders for payment of wages unlawfully

9   withheld from an employee are . . . a restitutionary remedy authorized by [the UCL]." <u>Cortez</u>, 23

10  Cal. 4th at 177. "The concept of restoration or restitution, as used in the UCL, is not limited only

11  to the return of money or property that was once in the possession of that person." <u>Id.</u> at 178.

12  "[E]arned wages that are due and payable pursuant to section 200 *et seq.* of the Labor Code are

13  as much the property of the employee who has given his or her labor to the employer in

14  exchange for that property as is property a person surrenders through an unfair business

15  practice." <u>Id.</u> "The failure to provide rest breaks still arise out of the employee's labor: the labor

16  performed while working through a statutorily required rest break; and are therefore

17  restitutionary." <u>Calleros v. Rural Metro of San Diego, Inc.</u>, No. 17-cv-00686-CAB-BLM, 2017

18  WL 3252551, at *4 (S.D. Cal. July 31, 2017). <u>See</u> <u>Murphy</u>, 40 Cal. 4th at 1104 ("If denied two

19  paid rest periods in an eight-hour work day, an employee essentially performs 20 minutes of

20  'free' work . . . ."). Accordingly, the Court finds that the rest period premium wages are

21  recoverable under the UCL. <u>See</u> <u>McGhee v. Tesoro Ref. & Mktg. Co. LLC</u>, 440 F. Supp. 3d

22  1062, 1073 (N.D. Cal. 2020) ("The better interpretation is that Section 226.7 compensates

23  employees for working without breaks, which is properly recoverable as restitution because it is

24  triggered in part by the employee's actions."); <u>Bates v. Leprino Foods Co.</u>, No. 2:20-cv-00700-

25  AWI-BAM, 2020 WL 6392562, at *8 (E.D. Cal. Nov. 2, 2020) ("[T]o the extent Bates's claim is

26  based on § 226.7 premiums for meal and rest break violations, these amounts are recoverable

27  under the UCL as restitution for unpaid wages. . . . Leprino's motion must be denied on this

28  point.")

1     Based on the foregoing, the undersigned recommends that Defendants' motion to dismiss

2  be denied on this ground.

3                              **b.  Wage Statements**

4     In the FAC, Plaintiffs allege that Defendants committed acts of unfair competition as

5  defined by the UCL by engaging in violations of California Labor Code section 226 regarding

6  accurate and timely itemized wage statements. (ECF No. 51 at 18–19, ¶ 95.) California Labor

7  Code section "226(a) protects employees' concrete interest in receiving accurate information

8  about their wages in their pay statements. An employer violates the statute if it 'fails to

9  provide accurate and complete information' required by § 226(a), and if 'the employee cannot

10  promptly and easily determine [that information] from the wage statement alone.'" Magadia v.

11  Wal-Mart Associates, Inc., 999 F.3d 668, 679 (9th Cir. 2021) (quoting Cal. Lab. Code

12  § 226(e)(2)(B)). "[I]t is well recognized that penalties for wage statement violations are not

13  recoverable under the UCL as they are not restitutionary." Bates, 2020 WL 6392562, at *8

14  (citing Gomez v. J. Jacobo Farm Labor Contractor, Inc., 334 F.R.D. 234, 267–68 (E.D. Cal.

15  2019) (collecting cases)). Accord Monaghan v. Telecom Italia Sparkle of N. Am., Inc., 647 F.

16  App'x 763, 766 (9th Cir. 2016) (holding that California Labor Code section "226 cannot—as a

17  matter of law—provide the basis for a § 17200 [UCL] claim because § 226 does not provide for

18  restitution"); Gomez, 334 F.R.D. at 267–68 (holding that "available penalties and damages

19  under Labor Code § 226 for wage statement violations are not restitutionary and, therefore, not

20  recoverable under the UCL").

21     Accordingly, the undersigned recommends that Defendants' motion to dismiss be granted

22  on this ground and that Plaintiffs' Fifth Cause of Action be dismissed without leave to amend

23  insofar as it seeks recovery for wage statement violations. See Bonin, 59 F.3d at 845 ("Futility of

24  amendment can . . . justify the denial of . . . leave to amend.").

25                        **B.  Sam's Club Allegations**

26     Defendants assert that "the FAC does not allege that Sam's Club ever employed

27  Plaintiffs. As such, Sam's Club did not cause the alleged Labor Code violations, and Plaintiffs do

28  not have standing to represent employees of that company. All allegations in the FAC pertaining

1    to Sam's Club, including the putative class definitions, should be dismissed." (ECF No. 52 at

2    17.) Plaintiffs "agree that class allegations pertaining to Sam's club employees should be

3    dismissed." (ECF No. 54 at 8 n.1.) Accordingly, the undersigned recommends Defendants'

4    motion to dismiss be granted on this ground and that all allegations in the FAC pertaining to

5    Sam's Club be dismissed without leave to amend.

6                          **C.  Night Manager Subclass**

7              Defendants assert that Plaintiffs do not have standing to represent the night manager

8    subclass. (ECF No. 52 at 17.) Defendants argue that because the UCL claim should be dismissed

9    and the benefit of the UCL's longer four-year statute of limitations does not apply, Plaintiffs had

10   until March 2020 to file a lawsuit for any wage claims on behalf of night managers but Plaintiff

11   Sousa did not file his initial complaint until April 7, 2020. (Id. at 18.) In other words, "[b]ecause

12   Plaintiff Sousa did not experience an injury during the limitations period, he lacks standing to

13   bring claims on behalf of this subclass." (ECF No. 55 at 11.) In the opposition, Plaintiffs contend

14   that even if the UCL claim was to fail, Plaintiff Sousa still has standing to represent the Night

15   Manager subclass because "there is no dispute Plaintiff Sousa has alleged cognizable wage and

16   hour injuries relating to his work experiences with Defendant, and otherwise has a 'direct and

17   substantial interest' in the litigation." (ECF No. 54 at 16.) Plaintiffs state that Defendants have

18   confused standing with typicality and "[t]his assessment is not properly conducted as a pleading

19   challenge, but during class certification proceedings." (ECF No. 54 at 17.)

20             "Although both [standing and class certification] 'aim to measure whether the proper

21   party is before the court to tender the issues for litigation, ... [t]hey spring from different sources

22   and serve different functions.'" Melendres v. Arpaio, 784 F.3d 1254, 1261 (9th Cir. 2015) (first

23   alteration added) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)).

24   "*Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the

25   controversy he or she is entitled to litigate. *Class certification*, on the other hand, is meant to

26   ensure that named plaintiffs are adequate representatives of the unnamed class." Melendres, 784

27   F.3d at 1261. The Ninth Circuit has adopted the "class certification approach," which "holds that

28   once the named plaintiff demonstrates her individual standing to bring a claim, the standing

16

1    inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for

2    class certification have been met." Id. at 1262 (quoting Newberg on Class Actions § 2:6).

3         Defendants contend that "[b]ecause Plaintiff Sousa did not experience an injury during

4    the limitations period, he lacks standing to bring claims on behalf of this [night manager]

5    subclass." (ECF No. 55 at 11.) However, the standing inquiry focuses on whether "the named

6    plaintiff demonstrates her individual standing to bring a claim." Melendres, 784 F.3d at 1262.

7    Here, although Defendants contend that Plaintiff Sousa cannot bring claims on behalf of the

8    night manager subclass, they do not assert that Plaintiff Sousa lacks standing to pursue his

9    individual claim. The Ninth Circuit has held that a "district court err[s] by concluding *at the*

10   *pleading stage* that [plaintiff] lacked standing to assert claims on behalf of putative class

11   members" where the plaintiff "demonstrated standing to pursue his individual claims." Nunez v.

12   Saks Inc., 771 F. App'x 401, 402 (9th Cir. 2019) (emphasis added). The Ninth Circuit concluded

13   that "the district court should have deferred consideration of whether he was an adequate class

14   representative until the class certification stage of proceedings." Id. Accordingly, the

15   undersigned recommends Defendants' motion to dismiss be denied on this ground.

16        **D.  PAGA Claim**

17        Plaintiffs' Sixth Cause of Action is for civil penalties under California's Private

18   Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq*., for: (a) violations of

19   California Labor Code sections 200, 201, 202, 226.7, 1198, and 2802; (b) violations of California

20   Labor Code section 1197; (c) violations of California Labor Code section 510 and applicable

21   wage order; and (d) violations of California Labor Code section 226. (ECF No. 51 at 20–22.)

22   Defendants move to dismiss Plaintiffs' PAGA claim because: (1) it is barred by the settlement of

23   two actions approved in the Los Angeles Superior Court; (2) Plaintiffs failed to exhaust

24   administrative remedies regarding their PAGA claim for rest break, overtime, and expense

25   reimbursement violations; (3) the FAC does not comply with Rule 8's pleading requirements

26   with respect to the PAGA claim for wage statement and expense reimbursement violations; and

27   (4) the PAGA claim for wage statement violations is precluded by law-of-the-case doctrine.

28   (ECF No. 52 at 18.)

1           1.  Standing

2          Defendants assert that the doctrine of claim preclusion bars Plaintiffs from pursuing their

3   PAGA claim in light of the Los Angeles County Superior Court approving the settlement of two

4   actions, Johnny Cruz v. Wal-Mart Associates, Inc. et al., No. 18STCV03128, and Brittney

5   Johnson v. Wal-Mart Associates, Inc. et al., No. CIVDS1602699, (collectively,

6   "Cruz/Johnson"),[3] which sought civil penalties under PAGA for the same alleged Labor Code

7   violations at issue in the instant matter and covered all "individuals who are or were employed

8   by Defendants at 'Walmart' retail stores in the State of California in non-exempt positions at any

9   time during the period from December 28, 2014 to the earlier of June 14, 2021 or the Date of

10  Court Approval [May 28, 2021]." (ECF No. 52 at 19.) In the opposition, Plaintiffs contend that

11  the Cruz/Johnson settlement does not preclude their PAGA claims because the FAC "make[s]

12  clear that the PAGA claims do not begin until July 8, 2021" and "expressly challenge conduct

13  taking place *outside* the [Cruz/Johnson] release period." (ECF No. 54 at 17.) Defendants argue

14  that Plaintiffs lack standing to pursue a PAGA claim for violations occurring after July 8, 2021,

15  because "Plaintiff Castro has not worked during Plaintiffs' alleged PAGA period beginning on

16  July 8, 2021, and she has therefore not experienced a minimum wage, overtime, or wage

17  statement violation, which form the bases of Plaintiffs' PAGA claim." (ECF No. 55 at 12.)

18         As noted by Plaintiffs, "[t]here is no dispute the *Cruz/Johnson* settlement has resolved the

19  State's PAGA claims against Defendant up to May 28, 2021." (ECF No. 54 at 17.) Accordingly,

20  _____

21  [3] Defendants request the Court take judicial notice of the Joint Stipulation Re PAGA Penalty Settlement (dated May 19, 2021), Order Approving the Parties' PAGA Settlement Agreement (dated May 28, 2021), and Judgment (dated May 28, 2021) filed in Los Angeles County Superior Court in Cruz v. Wal-Mart Associates, Inc., No.

22  18STCV03128. (ECF No. 52-2.) In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001) (citing Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998)). "A court may, however, consider certain

23  materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss a motion for summary judgment." U.S. v. Ritchie,

24  342 F.3d 903, 908 (9th Cir. 2003). "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

25  determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings

26  have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted). See also Reyn's Pasta Bella, LLC v.

27  Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Accordingly, the Court takes judicial notice of the joint stipulation, order, and judgment

28  filed in Los Angeles County Superior Court in Johnny Cruz v. Wal-Mart Associates, Inc., No. 18STCV03128.

1    the Court will bypass the issue of claim preclusion and address whether Plaintiffs may pursue a

2    PAGA claim for violations occurring after the Cruz/Johnson release period.

3        In support of their argument that Plaintiffs have not experienced any Labor Code

4    violations since July 8, 2021, and thus do not have standing to pursue their PAGA claim,

5    Defendants cite to Magadia v. Wal-Mart Associates, Inc., 999 F.3d 668 (9th Cir. 2021), and

6    Robinson v. Southern Counties Oil Co., 53 Cal. App. 5th 476 (2020).[4] (ECF No. 52 at 23–24;

7    ECF No. 54 at 12–15.) In Magadia, the Ninth Circuit held that the plaintiff lacked *Article III*

8    standing to bring a PAGA claim for meal-break violations because he himself in fact suffered no

9    meal-break violation. 999 F.3d at 674–78. The Ninth Circuit "remand[ed] Magadia's meal-break

10   claim to the district court with instructions to return it to state court." Id. at 678.

11       Plaintiffs argue the contention "that Plaintiff Castro cannot seek PAGA penalties outside

12   of [the Cruz/Johnson] release period, because Castro did not personally experience Labor Code

13   violations after the release period . . . cannot be squared with the majority of California authority

14   relevant to this issue," (ECF No. 54 at 17), citing to Kim v. Reins International California, Inc., 9

15   Cal. 5th 73 (2020),[5] Huff v. Securitas Security Services, USA, Inc., 23 Cal. App. 5th 745

16   (2018),[6] and Johnson v. Maxim Healthcare Services, Inc., 66 Cal. App. 5th 924 (2021).[7]

---

17   [4] In Robinson, the plaintiff had worked for Southern Counties from 2015 to 2017, and in 2018, he filed a PAGA
18   action alleging that Southern Counties denied him and other aggrieved employees meal and rest breaks. In February
     2019, a settlement was approved for a class action "that sought individual damages as well as civil penalties under
19   PAGA for the same alleged Labor Code violations" and "covered all persons employed by Southern Counties in
     certain job classifications between March 17, 2013, and January 26, 2018." Robinson, 53 Cal. App. 5th at 480.
20   Robinson opted out of the class settlement and subsequently amended his complaint to represent employees who
     were employed by Southern Counties from January 27, 2018, to the present. Id. The California Court of Appeal
21   found that claim preclusion barred Robinson's claims with respect to violations settled in the class action, id. at 481–
     83, and that "the preclusion of Robinson's claims for the period during which he was employed by Southern
22   Counties deprives him of standing to assert claims arising exclusively after he was so employed," id. at 484.
     [5] In Kim, the issue before the California Supreme Court was whether "employees lose standing to pursue a claim
23   under [PAGA] if they settle and dismiss their individual claims for Labor Code violations[.]" 9 Cal. 5th at 80. Kim
     filed a putative class action against Reins that sought, *inter alia*, civil penalties under PAGA. Id. at 82. In light of an
24   arbitration agreement signed by Kim when he was hired, the trial court dismissed Kim's class claims, ordered
     arbitration of Kim's individual claims, and stayed the PAGA litigation until arbitration was complete. Kim settled
25   his individual claims, and the trial court granted Reins' motion for summary adjudication of the PAGA claim on the
     ground that Kim "was no longer an aggrieved employee with PAGA standing." Id. at 82–83. The California
26   Supreme Court reversed, finding that both requirements for PAGA standing—"[t]he plaintiff must be an aggrieved
     employee, that is, someone 'who was employed by the alleged violator' and 'against one or more of the alleged
27   violations was committed'"—were satisfied because "Kim became an aggrieved employee, and had PAGA standing,
     when one or more Labor Code violations were committed against him" and "[s]ettlement did not nullify these
     violations." Id. at 83–84 (quoting Cal. Lab. Code § 2699(c)).
28   [6] In Huff, the question presented was "whether a plaintiff who brings a representative action under [PAGA] may
     seek penalties not only for the Labor Code violation that affected him or her, but also for different violations that

1    Plaintiffs assert that "*Robinson* should not be followed, as it cannot be squared with the

2    California Supreme Court's decision in *Kim,* as well as the Court of Appeal's decisions in *Huff*

3    and *Johnson*." (ECF No. 54 at 21.)

4            As noted by Respondent, "[p]utting *Robinson* and *Johnson* aside," "Plaintiffs' Opposition

5    does not address *Magadia*, and instead discusses state court cases[.]" (ECF No. 55 at 14.) In

6    <u>Magadia</u>, the Ninth Circuit stated:

7                [T]he Supreme Court has expressed skepticism that "mere
             authorization to represent a third party's interests is sufficient to
8             confer Article III standing on private parties with no injury of their
             own." *Hollingsworth*, 570 U.S. at 710, 133 S.Ct. 2652. After all,
9             States "have no power directly to enlarge or contract federal
             jurisdiction." *Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983) (per
10            curiam) (simplified). Ultimately, "standing in federal court is a
             question of federal law, not state law." *Hollingsworth*, 570 U.S. at
11            715, 133 S.Ct. 2652.

12   <u>Magadia</u>, 999 F.3d at 674–75.

13           The FAC "make[s] clear that the PAGA claims do not begin until July 8, 2021." (ECF

14   No. 54 at 17.) However, Plaintiff Castro only worked for Walmart until August 10, 2019, and

15   was not employed by Defendants on July 8, 2021, or thereafter. Plaintiff Castro herself suffered

16   no labor violations by Defendants on July 8, 2021, or thereafter. Based on <u>Magadia</u>, Plaintiff

17   Castro lacks Article III standing to bring the PAGA claim,[8] and as "standing in federal court is a

18

19   ─────────────────────
     affected other employees." 23 Cal. App. 5th at 750. <u>Huff</u> "conclude[d] that PAGA allows an 'aggrieved
     employee'—a person affected by at least one Labor Code violation committed by an employer—to pursue penalties
20   for all the Labor Code violations committed by that employer." <u>Id.</u>
     [7] In <u>Johnson</u>, the plaintiff had signed an agreement with Maxim that she claimed included a noncompetition clause,
21   which is prohibited under California law. Johnson filed a complaint consisting of a single cause of action for
     representative claims for penalties under PAGA. "[T]he main issue posed by the parties on appeal is whether an
22   employee, whose individual claim is time-barred, may still pursue a representative claim under PAGA." 66 Cal.
     App. 5th at 929. Applying <u>Kim</u>, the California Court of Appeal answered in the affirmative because "Johnson
23   alleged she is employed by Maxim and that she personally suffered at least one Labor Code violation on which the
     PAGA claim is based" and "[t]he fact that Johnson's individual claim may be time-barred does not nullify the
24   alleged Labor Code violations nor strip Johnson of her standing to pursue PAGA remedies." <u>Id.</u> at 929, 930. <u>Johnson</u>
     distinguished <u>Robinson</u> because "there is no parallel case . . . that has been settled, involving the same PAGA claims
25   Johnson advances in this case" and "unlike the plaintiff in <u>Robinson</u>, Johnson remains an employee of Maxim and
     continues to be governed by the terms of the Agreement. Moreover, she alleged that Maxim persists in requiring
26   employees to sign agreements that contain the prohibited terms." <u>Id.</u> at 932.
     [8] It appears that Plaintiffs' PAGA claim is completely reliant on Plaintiff Castro. The Sixth Cause of Action alleges
27   compliance "with the procedures for bringing suit specified in California Labor Code Section 2699.3" by Plaintiff
     Castro's written notice, (ECF No. 51 at 21, ¶ 110), and the opposition only addresses Plaintiff Castro, (ECF No. 54
28   at 17–23). Additionally, the Court notes that Plaintiff Sousa did not assert a PAGA claim before the cases were
     consolidated. (ECF No. 1.)

question of federal law, not state law," <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 715 (2013), <u>Kim</u>, <u>Huff</u>, and <u>Johnson</u> do not dictate a different result. <u>See</u> <u>Gau v. Hillstone Rest. Grp., Inc.</u>, No. 20-CV-08250-SVK, 2022 WL 2833977, at *7 (N.D. Cal. July 20, 2022) (noting that "a plaintiff does not have standing to pursue PAGA penalties if he did not suffer an injury as a result of the challenged conduct" and holding that "[w]here, as in this case, a plaintiff's PAGA claim for the period during which he was employed by the defendant is precluded, he does not have standing to assert 'claims arising exclusively after he was so employed'" (citing <u>Magadia</u>, 999 F.3d at 678, and quoting <u>Robinson</u>, 53 Cal. App. 5th at 484)); <u>Nasiri v. T.A.G. Sec. Protective Servs.</u> <u>Inc.</u>, No. 18-CV-01170-NC, 2021 WL 4221624, at *3 (N.D. Cal. Sept. 16, 2021) (holding that "based on the timing of his *dates of employment*," plaintiff "lacks standing to assert PAGA claims on behalf of other employees who worked during a time period arising exclusively after [plaintiff]'s employment" and "[t]o the extent the <u>Johnson</u> opinion calls into question whether PAGA's standing requirement is dependent on the existence of an unredressed injury," resolving any tension in favor of "follow[ing] the Ninth Circuit's precedent in <u>Magadia</u>").

Accordingly, the undersigned recommends Defendants' motion to dismiss be granted on this ground and the Sixth Cause of Action be dismissed for lack of Article III standing with leave to amend. <u>See</u> <u>Warth</u>, 422 U.S. at 501–02 (noting that with respect to "a motion to dismiss for want of standing," "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing"); <u>Greenpeace</u>, 2022 WL 591451, at *2 ("[W]here a plaintiff fails to allege facts to support Article III standing, the complaint ordinarily is subject to dismissal, albeit with leave to amend.").

Although this determination renders moot Defendants' other arguments regarding failure to exhaust, failure to comply with Rule 8's pleading requirements, and preclusion by law-of-the-case doctrine, the Court will address these issues in an abundance of caution.

## 2. Exhaustion

Defendants also assert that Plaintiffs' PAGA claim should be dismissed because Plaintiffs did not exhaust administrative remedies as to the overtime, rest break, and expense

reimbursement violations. (ECF No. 52 at 24.) In the opposition, "Plaintiff Castro concedes that she has not exhausted her administrative remedies for rest break violations or unreimbursed expenses." (ECF No. 54 at 21 n.6.)

Before bringing a PAGA action, "the employee must give 'written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of [the California Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation.'" Alcantar v. Hobart Serv., 800 F.3d 1047, 1056 (9th Cir. 2015) (alteration in original) (quoting Cal. Lab. Code § 2699.3(a)(1)). Here, the FAC alleges that "[b]y letter dated March 16, 2020, Plaintiff Castro gave written notice to the LWDA [Labor and Workforce Development Agency] via online upload (at https://dir.tfaforms.net/308) and to Defendants via certified mail of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations." (ECF No. 51 at 21, ¶ 110.)[9]

The March 16, 2020 letter states in pertinent part:

> Notice is hereby provided that, pursuant to California Labor Code § 2699.3, Martha Castro ("Employee") contends that, Walmart Inc., ("Walmart") has violated, and continues to violate, provisions of the California Labor Code and wage orders promulgated by the Industrial Welfare Commission ("IWC Wage Orders"), including, but not limited to, California Labor Code §§ 201- 203, 226, 1194, 1194.2, 1197, 1197.1, 2698.
>
> . . .
>
> Employee and other aggrieved employees seek penalties and other compensation from Walmart for the relevant time period because Walmart improperly failed to compensate employees for all time spent "off the clock"; failed to pay all wages owed at termination; and failed to furnish accurate, itemized wage statements.

---

[9] Defendants have filed a request that the Court take judicial notice of the March 16, 2020 letter to the LWDA. (ECF No. 52-2.) Pursuant to the Ninth Circuit's "incorporation by reference" doctrine, the district court may—but is not required to—look beyond the pleadings and "take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1159–60 (9th Cir. 2012) (quoting Knieval v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)). Courts have taken judicial notice of PAGA notice letters at the motion to dismiss stage. See, e.g., Perez v. DXC Tech. Servs. LLC, No. 17-CV-06066-BLF, 2020 WL 5517276, at *2 (N.D. Cal. Sept. 14, 2020); Ogogo v. JayKay, Inc., No. 2:18-CV-03203-JAM-DB, 2019 WL 2267193, at *3 (E.D. Cal. May 28, 2019); Ovieda v. Sodexo Operations, LLC, No. CV 12-1750-GHK SSX, 2013 WL 3887873, at *2 (C.D. Cal. July 3, 2013).

. . .

Below please find the relevant facts and legal theories to support the aforementioned violations. In addition, a copy of the Complaint which further details the facts and theories of liability is attached hereto and incorporated by reference.

**Time Spent "Off the Clock"**

Walmart did not compensate their hourly non-exempt employees for all the minutes that they worked as described above, including but not limited to the time that the employees were subject to the control and direction of Walmart; and/or the time that the employees were suffered or permitted to work.

*Security Checks*

Pursuant to a uniform policy originated by Walmart, all hourly employees are subject to bag searches. Hourly employees were and are required to wait in line with the rest of the general public and be searched for potential or possible contraband. Thus, at the discretion and control of Walmart, Employee and other aggrieved employees were and are required to wait in line for security checks for each day at the end of each shift.

Employee alleges that after "clocking out" Employee and other aggrieved employees would get their belongings from their lockers, then would go to the exit where customers leave the store and wait in line with the general public to have their bags searched.

Employee alleges that the process can take approximately two (2) to ten (10) minutes depending on the number of people in line.

This daily uncompensated waiting time during security checks was done in order to undergo searches for possible contraband. Because such screening is designed to prevent and deter employee contraband, a concern that stems from the nature of the employee's work, the security checks and consequential wait time are necessary to the employee's primary work without compensation.

Employee alleges that there were no separate security check locations for employees, and all employees had to use the security checkpoints that are open to the public leaving the store. This created lengthy lines, and the time waiting in the security line was uncompensated by the Walmart.

(ECF No. 52-2 at 5–6.)

Defendants assert that the "letter does not contain any facts or theories to support overtime" because "it does not mention 'Labor Code § 510' or 'overtime[.]'" (ECF No. 52 at 25.) Plaintiffs contend that the letter put the LWDA and Defendants "on notice that she was pursuing overtime claims by reference to Section 1194" and the "entire section entitled 'Time

23

1   Spent Off the Clock,' whereby Plaintiff details her theory of liability that Defendant's mandatory

2   security checks resulted in uncompensated work time, including the amount of uncompensated

3   time, and detailed circumstances of this off the clock work." (ECF No. 54 at 23.) In the reply,

4   Defendants argue that this is insufficient because "Labor Code § 1194 is generally supportive of

5   minimum wage claims, whereas Labor Code § 510 is specific to overtime and it is not cited in

6   the PAGA letter. Moreover, the allegations regarding 'Time Spent Off the Clock' are not

7   supportive of an overtime claim because the PAGA letter does not allege that Plaintiff Castro

8   ever worked more than an eight-hour shift." (ECF No. 55 at 15.)

9       The Court finds instructive <u>Amey v. Cinemark USA Inc.</u>, No. 13-CV-05669-WHO, 2015

10   WL 2251504 (N.D. Cal. May 13, 2015), <u>rev'd and remanded sub nom.</u> <u>Brown v. Cinemark USA,</u>

11   <u>Inc.</u>, 705 F. App'x 644 (9th Cir. 2017). In <u>Amey</u>, the district court found that the plaintiffs'

12   "notice letters contain[ing] the allegation that Cinemark failed to record, state, or pay for hours

13   worked by employees off-the-clock . . . does not adequately give notice of the 'facts and

14   theories' of plaintiffs' claim under section 226 . . . that the overtime rate was listed as the same

15   as employees' hourly rate." <u>Amey</u>, 2015 WL 2251504, at *15. On appeal, the Ninth Circuit

16   reversed, finding:

17           [Plaintiff]'s PAGA letter pleaded facts and theories sufficient to
             put Defendants and the California Labor and Workforce
18           Development Agency on notice for potential investigation, which
             satisfies the policy goal of California Labor Code § 2699.3(a).
19           "California public policy favors the effective vindication of
             consumer protections . . . . Hurdles that impede the effective
20           prosecution of representative PAGA actions undermine the
             Legislature's objectives." *Williams*, 3 Cal. 5th at 548. As the
21           California Supreme Court further noted in *Williams*, "Nothing
             in Labor Code section 2699.3, subdivision (a)(1)(A), indicates the
22           'facts and theories' provided in support of 'alleged' violations
             must satisfy a particular threshold of weightiness, beyond the
23           requirements of nonfrivolousness generally applicable to any civil
             filing." *Id.* at 545.
24

25   <u>Brown</u>, 705 F. App'x at 645.

26       Here, the March 16, 2020 letter stated that Walmart "has violated, and continues to

27   violate, provisions of the California Labor Code . . . including, but not limited to, California

28   Labor Code §§ 201- 203, 226, 1194, 1194.2, 1197, 1197.1, 2698." (ECF No. 52-2 at 5.)

1   California Labor Code section 1194, in turn, provides: "Notwithstanding any agreement to work

2   for a lesser wage, any employee receiving less than the legal minimum wage or the legal

3   *overtime* compensation applicable to the employee is entitled to recover in a civil action the

4   unpaid balance of the full amount of this minimum wage or *overtime* compensation." Cal. Lab.

5   Code § 1194 (emphasis added). The letter also described the security check policy, which

6   required all hourly employees after "clocking out" to wait in line with the general public to have

7   their bags checked for contraband. The letter alleged that this process could take approximately

8   two to ten minutes and stated that "the time waiting in the security line was uncompensated by

9   the Walmart." (ECF No. 52-2 at 6–7.)

10        The Court finds that Plaintiff Castro's March 16, 2020 letter is significantly more robust

11  than the letter the Ninth Circuit found was sufficient to satisfy California Labor Code § 2699.3(a)

12  in Brown, 705 F. App'x 644. Defendants contend that Plaintiff Castro's letter is insufficient

13  because "Labor Code § 1194 is generally supportive of minimum wage claims, whereas Labor

14  Code § 510 is specific to overtime and it is not cited in the PAGA letter" and that "the

15  allegations regarding 'Time Spent Off the Clock' are not supportive of an overtime claim

16  because the PAGA letter does not allege that Plaintiff Castro ever worked more than an eight-

17  hour shift." (ECF No. 55 at 15). What Defendants contend is sufficient goes far beyond what is

18  required to satisfy PAGA's notice requirements, as stated by the California Supreme Court in

19  Williams v. Superior Court, 3 Cal.5th 531, 545 (2017) ("Nothing in Labor Code section 2699.3,

20  subdivision (a)(1)(A), indicates the 'facts and theories' provided in support of 'alleged'

21  violations must satisfy a particular threshold of weightiness, beyond the requirements of

22  nonfrivolousness generally applicable to any civil filing."), and interpreted by the Ninth Circuit

23  in Brown, 705 F. App'x 644.

24        Accordingly, the undersigned recommends Defendants' motion to dismiss be granted in

25  part and denied in part on this ground and that Plaintiffs' Sixth Cause of Action be dismissed

26  without leave to amend insofar as it seeks recovery for rest break and unreimbursed expenses

27  violations. Despite the Court's conclusion that Plaintiffs satisfy PAGA's notice requirements as

28  to the overtime violations, the Court notes that Plaintiffs' PAGA claim for overtime violations is

1  subject to dismissal given the Court's determination that the Sixth Cause of Action should be

2  dismissed for lack of Article III standing.

### 3.  Rule 8

4  Defendants also move to dismiss, pursuant to Federal Rule of Civil Procedure 8,

5  Plaintiffs' PAGA claim for alleged violations of Labor Code sections 226 (wage statement) and

6  2802 (expense reimbursement) because the FAC does not provide any allegations that support

7  these claims. (ECF No. 52 at 25.) "Under the pleading standards of Rule 8(a)(2), a party must

8  make a 'short and plain statement of the claim showing that the pleader is entitled to

9  relief.'" Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (quoting

10 Fed. R. Civ. P. 8(a)(2)). Here, Plaintiffs concede that they "neglected to include Section 226

11 allegations in the PAGA cause of action."[10] (ECF No. 54 at 23.) Accordingly, the undersigned

12 recommends Defendants' motion to dismiss be granted on this ground, the Sixth Cause of Action

13 be dismissed for failure to satisfy Federal Rule of Civil Procedure 8 with respect to the wage

14 statement violations, and Plaintiffs granted leave to amend. See Nat'l Council of La Raza, 800

15 F.3d at 1041 ("It is black-letter law that a district court must give plaintiffs at least one chance

16 to amend a deficient complaint, absent a clear showing that amendment would be futile.")

### 4.  Law of the Case

18 As set forth in section II, *supra*, prior to consolidation, Plaintiff Castro's claim for

19 inaccurate wage statements under California Labor Code section 226 was dismissed with

20 prejudice. In dismissing Plaintiff Castro's wage statement claim with prejudice, the Court stated:

> California Labor Code Section 226 itemizes nine categories of
> information that must be included in a wage statement. See Cal.
> Lab. Code § 226. If an employee suffers injury by an employer's
> knowing and intentional failure to provide such information, she is
> entitled to recover damages as prescribed in the statute and
> reasonable attorney's fees. Id.
>
> Plaintiff alleges that Defendants:
>
> [F]ailed to include accurate hours and gross wages earned due

---

[10] As set forth in section IV(D)(2), *supra*, Plaintiffs concede they have not exhausted administrative remedies for the PAGA claim for unreimbursed expenses, (ECF No. 54 at 21 n.6), and thus, it should be dismissed as unexhausted. Accordingly, only the PAGA claim for alleged violations of Labor Code section 226 (wage statement) is at issue with respect to Defendants' Rule 8 argument.

to Defendants' systematic policies of failing to compensate Plaintiff and members of the Plaintiff Class for all time worked, including time spent "off the clock."

FAC ¶ 85. Defendants argue this claim is "completely derivative of her off-the-clock claim" and therefore must be dismissed. Reply at 2. The Court agrees.

As Walmart points out, this Court decided this exact issue in Krauss v. Wal-Mart, Inc., No. 19-cv-00838, 2019 WL 6170770l, at *4 (E.D. Cal, Nov. 20, 2019). Reply, ECF No. 13, at 2. In Krauss, the plaintiff brought a Section 226 claim alleging she and other putative class members were required to work off the clock and through meal breaks. Id. at *4. In its analysis, the Court relied on Maldonado v. Epsilon Plastics, which held that an inaccurate wage claim that "boils down to the proposition that any failure to pay overtime . . . also generates a wage statement injury," is an impermissible double recovery. 22 Cal. App. 5th 1308, 1336 (2018). Maldonado clarified that "only the absence of hours worked will give rise to an inference of [Wage Statement] injury," since the absence of wages earned will be remedied by a wage and hour claim. Id. at 1337. Finding that plaintiff's claim boiled down to the proposition that failure to pay for time worked off-the-clock also violated wage statement laws, this Court dismissed plaintiff's Section 226 claim in Krauss. 2019 WL 6170770l, at *4.

Plaintiff's claim here, like the claim in Krauss, is entirely derivative of her off-the-clock claim and impermissibly seeks a double recovery. Plaintiff argues Walmart violated accurate wage statement law by failing to compensate her and putative class members for time spent "off the clock." FAC ¶ 85. Plaintiff contends her claim is based on the absence of "hours worked," and, therefore, entitles her to recovery under Section 226. Opp'n at 5. The Court disagrees. This claim is based on "wages earned" since her allegation for failure to compensate off-the-clock work will be remedied by her wage and hour claim. Maldonado, 22 Cal. App. 5th at 1337. This interpretation is supported by the purpose of Section 226, which is "to document the paid wages to ensure the employee is fully informed regarding the calculation of those wages." Id. (quoting Soto v. Motel 6 Operating, L.P. 4 Cal. App. 5th 385, 392 (2016)). Here, it is undisputed that the wage statements accurately reflected the calculation of the wages that were actually paid to Plaintiff. And although those wages do not accurately reflect the "wages earned," Plaintiff cannot also recover for that violation under Section 226. The Court further finds that any attempt to amend this claim would be futile and therefore Plaintiff's itemized wage statement claim is DISMISSED WITH PREJUDICE.

(Order at 4–5, Castro, ECF No. 15.)[11]

---

[11] The Court may take judicial notice of its own records in other cases. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1   Defendants assert that Plaintiffs' PAGA claim for wage statement violations is barred by

2   the law-of-the-case doctrine because Plaintiff Castro's wage statement claim was previously

3   dismissed with prejudice. (ECF No. 52 at 26–27.) In the opposition, Plaintiffs state that "while

4   Plaintiff Castro must live with that decision for her individual claims, this has nothing to do with

5   whether a PAGA penalty can be assessed for Defendant's failure to furnish accurate wage

6   statements." (ECF No. 54 at 24.)

7   "The law-of-the-case doctrine generally provides that when a court decides upon a rule of

8   law, that decision should continue to govern the *same issues* in subsequent stages in the same

9   case." Musacchio v. United States, 577 U.S. 237, 244–45 (2016) (emphasis added) (internal

10   quotation marks omitted) (quoting Pepper v. United States, 562 U.S. 476, 506 (2011)). "The

11   doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,'

12   but it does not 'limit [courts'] power.'" Musacchio, 577 U.S. at 245 (alteration in original)

13   (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)).

14   Defendants contend that the PAGA claim is derivative of the failed section 226 claim and

15   thus it must also fail, citing to Byrd v. Masonite Corp., No. EDCV 16-35 JGB (KKx),  2016 WL

16   756523 (C.D. Cal. Feb. 25, 2016), Sherman v. Schneider National Carriers, Inc., No. CV

17   18008609-AB (JCx),  2019 WL 3220585 (C.D. Cal. March 6, 2019), and Price v. Starbucks

18   Corp., 192 Cal. App. 4th 1136, 1147 (2011). (ECF No. 55 at 16.) However, these cases are

19   distinguishable because in Byrd and Sherman, the underlying individual claims failed to state a

20   claim for relief under Rule 12(b)(6) and in Price, the PAGA claim was based on the alleged

21   failure to timely pay Price upon discharge but the court had found that the complaint alleged

22   Price received his final paycheck on the day he was discharged and therefore there was no

23   underlying violation. In contrast, here, Plaintiff Castro's underlying wage statement claim was

24   dismissed due to impermissible double recovery. (Order at 4–5, Castro, ECF No. 15.)

25   As noted by Plaintiffs in the opposition, neither "the word 'PAGA,' nor any aspect of

26   Plaintiff Castro's PAGA claim, is mentioned in [the] order." (ECF No. 54 at 24.) Moreover, the

27   California Supreme Court has explained that a "PAGA claim is legally and conceptually

28   different from an employee's own suit for damages and statutory penalties." Kim, 9 Cal. 5th at

1  81. "Every PAGA claim is 'a dispute between an employer and the *state*'" and "the civil

2  penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory

3  damages or penalties that may be available to employees suing for individual violations." Id.

4  (quoting Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348, 386 (2014)). Given

5  that a PAGA claim and penalties are legally and conceptually distinct from an employee's own

6  suit and damages or penalties for individual violations, Kim, 9 Cal. 5th at 81, the Court finds that

7  a PAGA claim for wage statement violations would not be barred by the law-of-the-case doctrine

8  in this instance.

9       Accordingly, the undersigned recommends Defendants' motion to dismiss be denied on

10  this ground. Despite this conclusion, the Court notes that Plaintiffs' PAGA claim for wage

11  statement violations is subject to dismissal given the Court's determination that the Sixth Cause

12  of Action claim should be dismissed for lack of Article III standing.

13  **V.     CONCLUSION**

14       Accordingly, the undersigned HEREBY RECOMMENDS that:

15       1.  Defendants' motion to dismiss (ECF No. 52) be GRANTED IN PART and DENIED

16           IN PART;

17       2.  Plaintiffs' Sam's Club allegations, the Fifth Cause of Action (UCL claim) with

18           respect to wage statement violations, and the Sixth Cause of Action (PAGA claim)

19           with respect to expense reimbursement and rest break violations be DISMISSED

20           WITHOUT LEAVE TO AMEND;

21       3.  Save and except as noted above, the Fifth Cause of Action (UCL claim) and the Sixth

22           Cause of Action (PAGA claim) be DISMISSED WITH LEAVE TO AMEND; and

23       4.  Plaintiffs be granted leave to file a second amended consolidated complaint.

24       These Findings and Recommendations will be submitted to the United States District

25  Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within

26  **FOURTEEN (14) days** after being served with a copy of these Findings and Recommendations,

27  any party may file written objections with the court and serve a copy on all parties. Such a

28  document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 20, 2022**                   /s/ _Erica P. Grosjean_
                                                UNITED STATES MAGISTRATE JUDGE