1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  GEORGE SOUSA, *et al.*, *on behalf of themselves and class members*, | Case No. 1:20-cv-00500-EPG |
| 11 | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS |
| 12                          Plaintiffs, | |
| 13          v. | (ECF No. 70). |
| 14  WALMART, INC., *et al.*, | ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE |
| 15                          Defendants. | (ECF No. 71). |
| 16 | |
| 17 | ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION |
| 18 | (ECF No. 82). |
| 19 | |

20          George Sousa and Martha Castro (collectively, "Plaintiffs") are proceeding with a second

21  amended consolidated complaint ("SAC") asserting various individual and representative claims

22  against Walmart Inc. and Wal-Mart Associates, Inc. (collectively, "Defendants") for violating

23  California's labor laws. (ECF No. 67). Before the Court is Defendants' motion to dismiss, or in

24  the alternative stay, the SAC, (ECF No. 70), and Plaintiffs' motion for reconsideration (ECF No.

25  82). For the reasons described below, the Court will grant in part and deny in part Defendants'

26  motion to dismiss. Further, the Court will grant Plaintiffs' motion for reconsideration.[1]

27  _____

28  [1] The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of
28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 63, 64, 65).

## I.    BACKGROUND

The procedural history of this case can be found in the Court's prior order regarding Defendants' motion to dismiss Plaintiffs' First Amended Consolidated Complaint ("FAC"). (*See* ECF No. 66, pp. 5-6). In that order, the Court dismissed certain allegations and claims *without leave to amend,* specifically: the FAC's allegations regarding Sam's Club, Plaintiffs' UCL claim to the extent that claim was premised on wage statement violations, and Plaintiffs' PAGA claim to the extent that claim was premised on expense reimbursement and rest break violations. (*Id.*, p. 28). The Court granted Plaintiff leave to amend the UCL claim and the PAGA claim. (*Id.*) Specifically, the Court gave Plaintiffs leave to amend the UCL claim to include allegations as to whether Plaintiffs lacked an inadequate remedy at law (*id.*, pp. 8-9), and as to whether either Plaintiff had individual standing to pursue injunctive relief under the UCL, (*id.*, pp.9-12).

On March 8, 2023, Plaintiffs filed a Second Amended Consolidated Complaint ("SAC"). (ECF No. 67). Plaintiffs assert several state law claims for wage and overtime violations, as well as derivative claims for waiting time penalties and wage statement violations. Based on those violations, Plaintiffs assert claims under California's Unfair Competition Law ("UCL"), California Business & Professional Code §§ 17000, *et seq.*, for restitution, injunctive relief[2], and attorneys' fees. The SAC also seeks statutory penalties under California's Private Attorneys General Act ("PAGA"), California Business & Professional Code §§ 2698, *et seq.*[3]

On March 22, 2023, Defendants filed a partial motion to dismiss Plaintiffs' SAC, or in the alternative, stay certain claims. (ECF No. 70). Defendants challenge several aspects of the SAC. First, Defendants request the Court dismiss or strike any allegations or claims regarding class-wide meal break violations or Defendants' COVID-19 screening policies and procedures on the

---

[2] In dismissing Plaintiffs' claim for injunctive relief under the UCL on the ground that Plaintiffs each lacked standing to pursue such relief, the Court's order was ambiguous as to whether leave to amend was granted. (*See* ECF No. 66, p. 12, *but see id.*, p. 28). However, as Plaintiffs' SAC reasserts this claim without any additional factual allegations, Plaintiffs' sixth cause of action for violations of California's Unfair Competition Law is subject to dismissal to the extent that Plaintiffs seek injunctive relief for the same reasons set forth in the Court's prior order. (*Id.*, pp. 10-12).

[3] Defendants' motion to dismiss argues that Plaintiff Castro's PAGA claim should be dismissed because "(1) she does not have Article III standing; (2) the Court already dismissed her PAGA claim for rest break and expense reimbursement violations with prejudice; and (3) to the extent she is now seeking PAGA penalties for alleged unlawful COVID-19 screenings and meal period violations, those claims are unexhausted." (ECF No. 70, p. 18). Plaintiffs' opposition states that "Plaintiffs agree to dismiss their Seventh Cause of Action under the Private Attorney Generals Act in its entirety." (ECF No. 75, p. 8 n.1). Accordingly, the Court will dismiss Plaintiffs' seventh cause of action for statutory penalties under California's Private Attorneys General Act.

ground that these new allegations are outside the scope of leave to amend previously granted by the Court. Alternatively, Defendants ask the Court to stay these claims under the first-to-file rule or the Court's inherent authority. Second, Defendants contend that Plaintiffs' meal break claims and rest period claims each fail to state a claim. Third, Defendants seek dismissal of Plaintiffs' UCL claim to the extent that claim is derivative of Plaintiffs' COVID-19, meal break, and rest period claims. Finally, Defendants contend that Plaintiffs' wage statement claim must be dismissed because, prior to consolidation[4], this claim was dismissed with prejudice from Plaintiff Castro's complaint by District Judge John A. Mendez.

Plaintiffs filed an opposition to Defendants' motion to dismiss on April 5, 2023. (ECF No. 74). Defendants filed a reply on April 21, 2023. (ECF No. 77). On May 5, 2023, the Court held a hearing on Defendants' motion to dismiss. (ECF No. 78). David Leimbach appeared telephonically on behalf of Plaintiffs. (*Id.*) Mitchell Wrosch appeared telephonically on behalf of Defendants. (*Id.*)

At the hearing, the Court discussed with the parties the procedural implications of reviving the wage statement claim in the SAC. (*See* ECF No. 83, pp. 23-36). Based on that discussion, the Court gave Plaintiffs leave to file a formal motion for reconsideration of Judge Mendez's order. (ECF No. 79). Plaintiffs filed a motion for reconsideration on May 22, 2023. (ECF No. 82). Defendants filed an opposition on June 5, 2023. (ECF No. 84). Plaintiffs filed a reply on June 12, 2023. (ECF No. 86).

## II.    SUMMARY OF ALLEGATIONS

Plaintiffs seek to represent a class of California citizens employed by Defendants as non-exempt employees and assert seven causes of action under state law: (1) failure to pay overtime wages pursuant to California Labor Code § 510; (2) failure to pay minimum wage pursuant to Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; (3) failure to provide meal breaks and rest periods pursuant to Labor Code §§ 226.7 and 512; (4) failure to pay all wages due upon termination pursuant to Labor Code §§ 201-203; (5) failure to provide accurate wage statements

---

[4] Plaintiff Sousa filed his initial complaint against Defendants in this Court on April 7, 2020. (ECF No. 1). On May 6, 2020, Plaintiff Castro's complaint was removed to the Eastern District's Sacramento Division in *Castro v. Walmart Inc.*, Case No. 2:20-cv-00928-ADA-EPG (E.D. Cal.) ("*Castro*"). (*Castro*, ECF No. 1). On May 11, 2021, pursuant to the parties' stipulation, the Court consolidated this case with *Castro*, and Plaintiffs were granted leave to file a consolidated complaint. (ECF No. 28).

pursuant to Labor Code §§ 201-203; (6) violations of the California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) statutory penalties under California's Private Attorneys General Act, Labor Code § 2698, *et seq.*[5] (ECF No. 67, pp. 1-3).

Plaintiffs' claims arise from Defendants' policies and procedures regarding employee security checks, employee COVID-19 screenings, meal breaks, and rest periods, which Plaintiffs allege were uniformly applied to all hourly, non-exempt employees of Walmart's retail locations in California. (*See* ECF No. 67, p. 3). Plaintiffs allege Defendants required Plaintiffs and other class members to wait in security check lines before they could leave the store after their shift ended. (*Id.*, pp. 8-11). According to Plaintiffs, the time spent waiting in the security line was not compensated because Defendants required Plaintiffs and other class members to clock out before they entered the line. (*Id.*, p. 8). Plaintiffs allege that these security check lines could take "between two to ten minutes depending on the number of people in line and [the] person checking bag and or receipts." (*Id.*, p. 9). For instance, Plaintiff Sousa alleges that during a two-week period in January 2017, he worked at least forty hours on the clock per week and spent "between twenty-five and fifty minutes in security checks, off the clock." (*Id.*, p. 10). Plaintiff Castro's allegations describe a similar situation. (*Id.*, p. 11). Plaintiffs allege that because Plaintiffs regularly worked at least eight hours, any off-the clock time spent in security check lines necessarily resulted in overtime violations. (*Id.*)

Plaintiffs also allege that, beginning in April 2020, Defendants required employees, including some class members, to be screened for COVID-19. (*Id.*, pp. 9-10). Plaintiffs allege that these COVID-19 screenings, which included waiting in line for temperature checks, took place before an employee clocked in for their shift. (*Id.*, p. 10).

In addition to the uncompensated work performed by Plaintiffs and class members before and after their shift, Plaintiffs allege that "as a matter of policy" Defendants required employees to remain "on duty" during their shift, which often resulted in interrupted or missed meal breaks and rest periods. (*Id.*, p. 12). Plaintiffs allege that Defendants' supervisors and managing employees "know and are aware" that non-exempt employees "routinely work through meal and

---

[5] Plaintiffs' seventh cause of action for PAGA penalties is dismissed pursuant to the parties' stipulation. *See supra*, p. 2-3 n4.

4

rest breaks and are not provided with premium pay for the missed breaks" as statutorily required. (*Id.*) And when Plaintiffs and other class members were required to work during unpaid breaks, they were necessarily not compensated by Defendants for all wages owed or any overtime that might have accrued. (*Id.*, p. 13). Specifically, Plaintiff Sousa alleges that during a two-week period in January 2017, he "worked ten shifts, each of which were in excess of 7 hours—sufficient length to entitle him to one meal break, and two rest periods, each shift." (*Id.*) However, "Plaintiff Sousa was on duty during those breaks and those breaks were subject to interruption at any time." (*Id.*)

Plaintiffs also allege that Defendants' timekeeping procedures for night shift manager meal breaks at Walmart's retail locations resulted in an extra half-hour deduction of pay in addition to the meal break that was already unpaid, each time a night shift manager, including Plaintiff Sousa and other class members, took a half-hour meal break. (*Id.*, pp. 11-12).

Further, because of the wage, overtime, meal break, and rest period violations, Plaintiffs assert that their wage statements provided inaccurate records of total hours worked and wages earned. (*Id.*, pp. 14-15). Plaintiffs allege that Defendants' failure to provide accurate wage statements is willful and was carried out in bad faith. (*Id.*, p. 15).

Finally, Plaintiffs allege that some class members, including Plaintiffs, were still owed compensation for work performed off-the-clock, missed or interrupted meal breaks and rest periods, and overtime from Defendants when their employment ended, but were not paid all wages owed within the statutory period. (*Id.*, p. 25). Plaintiffs allege that Defendants' failure to provide all compensation owed upon separation was willful. (*Id.*, pp. 25-26).

## III.   REQUEST FOR JUDICIAL NOTICE

In support of Defendants' partial motion to stay, Defendants request judicial notice of certain proceedings in other class action cases: 1) *Haro v. Walmart Inc.*, Case No. 1:21-cv-00239-ADA-SKO, Eastern District of California; 2) *Hernandez v. Wal-Mart Associates, Inc.*, CIV SB 2024738, San Bernardino County; 3) *Hernandez v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-00166-FLA, Central District of California. (ECF No. 71). Plaintiffs do not oppose Defendants' request. As the court dockets, filings, and orders of these cases are matters of public record and not subject to reasonable dispute, *see* Fed. R. Civ. Evid. 201(b), the Court will grant Defendants'

request for judicial notice.

## IV.     MOTION TO DISMISS

### A.     Legal Standards

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in *Conley*, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The standard for

plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### 1.   **Leave to Amend**

Under Rule 15(a), a party is entitled to amend its pleadings once as a matter of course before a responsive pleading is served. Fed. R. Civ. P. 15(a). After a response has been filed, a party may amend its pleading "only by leave of court or by written consent of the adverse party." *Id.* A district court "should freely give leave [to amend] when justice so requires," Fed. Civ. P. 15(a)(2). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Serv., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Not all of the factors merit equal weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* "Futility of amendment can, by itself, justify the denial of a motion for leave to amend," *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), but "[u]ndue delay by itself is insufficient to justify denying leave to amend," *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1167 (9th Cir. 2016). A court is also justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *Carvalho*, 629 F.3d at 892. Indeed, "the court's discretion to deny [leave to] amend is particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas and Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotation marks and citations omitted).

The party opposing leave to amend bears the burden of proof. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

### 2.   **First-to-File Rule**

The first-to-file rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule allows for judicial efficiency and

comity "when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc.*, 946 F.2d at 628. To apply the first-to-file rule, a court considers three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Id.* at 625-26. However, the court retains the discretion to disregard the first-to-file rule in the interests of equity. *Id.* at 622.

**B.      COVID-19 Screening Claims**

Defendants' motion to dismiss requests that the Court dismiss or strike all allegations and claims in the SAC regarding Defendants' COVID-19 screening policies and procedures implemented at Walmart retail locations. (ECF No. 70, p. 15). Alternatively, Defendants request that the Court stay or dismiss Plaintiffs' COVID-19 claims under the first-to-file rule or the Court's inherent authority because these claims are already being litigated in another putative class action in the Eastern District, *Haro v. Walmart Inc.*, Case No. 1:21-cv-00239-DAD-SKO ("*Haro*"). (*Id.*, p. 28).

The Court agrees with Defendants that the COVID-19 claims asserted by Plaintiffs in the SAC are outside the scope of leave to amend granted previously by the Court. (*See* ECF No. 70, pp. 15-17). Plaintiffs argue the SAC merely provides additional facts demonstrating Defendants' liability as to the underlying wage and hour violations. However, many district courts treat newly pled theories of liability regarding already existing claims as procedurally improper when the newly pled theories exceed the scope of leave to amend. *See PB Farradyne, Inc. v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking new theory of liability alleged in third amended complaint because new factual allegations were "outside the scope of the leave to amend granted"); *see also DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("In cases like this one, however, where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleadings should be dismissed or stricken.").

The Court must now decide whether to grant Plaintiffs leave to amend their complaint to include the COVID-19 screening allegations as part of Plaintiffs' already-existing wage and hour

1    and derivative claims.[6]

2           **1.   <u>Bad Faith</u>**

3           Here, although Plaintiffs improperly asserted the new COVID-19 allegations in the SAC

4    without formally seeking leave to amend, there is "no evidence in the record which would

5    indicate a wrongful motive." *DCD Programs, Ltd.*, 833 F.2d at 187.

6           **2.   <u>Undue Delay</u>**

7           As to whether Plaintiffs have delayed in bringing the COVID-19 allegations, the Court

8    notes that it has not yet issued a Rule 16 scheduling order or otherwise provided a deadline for

9    amendment. However, as Defendants point out, Plaintiffs did not raise any allegations regarding

10   Walmart's COVID-19 policies in any of the six collective complaints filed by Plaintiffs. (ECF

11   No. 70, p. 16 n.2).[7] Plaintiff Castro filed her initial complaint on March 24, 2020, (*see Castro*,

12   ECF No. 1), and Plaintiff Sousa filed his initial complaint on April 7, 2020, (*see* ECF No. 1).

13   Since March 2020 and the onset of the COVID-19 pandemic, Plaintiffs have individually and

14   collectively asserted six complaints. (*See* ECF Nos. 1, 29, 51, 67; *see Castro*, ECF Nos. 1, 8).

15   However, only Plaintiffs' SAC includes any allegations regarding procedures and policies

16   implemented by Walmart in response to the COVID-19 pandemic. Accordingly, the Court finds

17   that there has been undue delay. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.

18   1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have

19   known the facts and theories raised by the amendment in the original pleading."); *Lockheed

20   Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is

21   not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is

22   given for the delay.") (internal citations omitted).

23          **3.   <u>Prejudice to Defendants</u>**

24          Although this case was filed three years ago, the Court has not yet set any discovery

25   deadlines. Thus, the Court finds no prejudice to Defendants in Plaintiffs' proposed amendment.

---

[6] As discussed at the hearing, the Court has decided to construe Plaintiffs' inclusion of new allegations in the SAC as a request for leave to amend. The Court solicited argument from the parties regarding the leave to amend factors, including delay, prejudice, and futility.

[7] Defendants also argue (and the Court agrees) that neither Plaintiff has standing to raise any allegations regarding COVID-19 because neither Plaintiff Castro nor Sousa were subjected to Walmart's COVID-19 screenings. *See supra*, pp. 10-11.

*See Calderon v. Tulare Reg'l Med. Ctr.*, No. 1:17-cv-0040-BAM, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018) ("Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred.") (citing *DCD Programs, Ltd.*, 833 F.2d at 187–88). Defendants argue that they will be prejudiced if Plaintiffs are granted leave to amend because they will be forced to defend the same class claims based on Walmart's COVID-19 screening policies in both this case and in *Haro v. Walmart, Inc.*, Case No. 1:21-cv-00239-ADA-SKO (E.D. Cal.) ("*Haro*"). While this is true, the Court evaluates this argument under the first-to-file doctrine, addressed below.

### 4.  Futility of amendment

A court may deny leave to amend "where the amendment would be futile ... or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991); *see also Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend is properly denied if the requested amendment would be futile). As discussed below, the Court finds that amendment would be futile because Plaintiffs do not have standing to assert claims based on Defendant's COVID-19 screening policies and procedures, and even if they did, those claims would be subject to dismissal under the first-to-file doctrine.

### i.  *Plaintiffs do not have standing to assert claims based on Walmart's COVID-19 screening policies and procedures*

Standing is a threshold jurisdictional requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Article III requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 560-61) (internal quotation marks omitted). "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985.

Defendants argue that Plaintiffs do not have individual standing to assert claims based

upon the COVID-19 screenings. (ECF No. 70, p. 17). As to Plaintiff Castro, Defendants contend that "the allegations in the SAC are clear that Plaintiff Castro never experienced a COVID-19 screening because her employment ended before the COVID-19 pandemic." (*Id.*) (citing to ECF No. 67, p. 7). Further, Defendants argue that Plaintiff Sousa "fails to allege that he experienced any Labor Code violations as a result of unlawful COVID-19 screenings because he has apparently been a salaried exempt associate of Walmart since 2017." (*Id.*) (citing to ECF No. 67, p. 6). According to Plaintiffs, "this argument misunderstands the difference between whether a plaintiff has *standing* to assert a cause of action with whether the theory of liability relied upon by that plaintiff to substantiate his individual claims is sufficiently typical of other class members to meet the typicality requirements of Rule 23." (ECF No. 75, p. 13). Plaintiffs contend that Article III standing "merely requires Plaintiffs to state a minimum wage or overtime claim for themselves." (*Id.*, pp. 14-15).

The Court agrees with Defendants on this issue. Here, Plaintiffs have not alleged that they suffered a concrete or particularized injury "fairly traceable" to Walmart's COVID-19 screening policies and procedures. Although Plaintiffs contend that the putative class members share the same injury, i.e., wage and hour violations, Plaintiffs do not explain how either Plaintiff has individual standing for wage and hour violations resulting from Defendants' conduct regarding COVID-19 when neither Plaintiff was subjected to such conduct. Accordingly, the Court finds that Plaintiffs do not have standing to assert claims based on Defendants' COVID-19 policies and procedures.

### ii.    *Applicability of first-to-file doctrine to COVID-19 claims*

Defendants also argue that Plaintiffs' COVID-19 claims should be dismissed (or stayed) under the first-to-file rule because these claims are already being litigated in another putative class action, *Haro v. Walmart Inc.*, Case No. 1:21-cv-00239-DAD-SKO, which was filed in this district on February 23, 2021. (ECF No. 70, p. 28).[8] The plaintiffs in *Haro* allege federal and state claims based on Walmart's COVID-19 screening policies and procedures on behalf of a proposed

---

[8] Defendants also contend that a stay would be appropriate under the Court's inherent authority because a stay would not harm Plaintiffs or the putative class and would ensure that Defendants were not subjected to duplicative litigation concerning identical issues and the same putative class in multiple venues. (*Id.*, pp. 33-34). As the Court finds amendment would be futile under the first-to-file rule as to Plaintiffs' COVID-19 and meal-break claims, *see supra* pp.14, 16, the Court will not address this argument.

class of "all current and former hourly paid employees of Walmart who underwent a COVID-19 screening during at least one week in California" from February 23, 2017 to the present. Plaintiffs argue that this action was the first to file claims alleging overtime and minimum wage violations on behalf of Defendants' non-exempt employees because the *Castro* complaint was filed on March 24, 2023. (ECF No. 75, p. 24). Plaintiffs further argue that staying this case in favor or *Haro* will cause prejudice to some class members, numbering in the tens of thousands, for whom this case is the "only chance at recovery." (*Id.*, p. 25).

The Court finds that the first-to-file doctrine provides an alternative reason as to why it would be futile to grant Plaintiffs leave to amend the COVID-19 screening claims. Plaintiffs filed wage and overtime claims based on off-the-clock security screenings prior to *Haro*. However, as discussed above, Plaintiffs did not bring any allegations regarding COVID-19 screenings until filing the SAC. For that reason, the Court finds that *Haro* is first filed with respect to state labor violations arising from Walmart's COVID-19 screening policies and procedures. Further, as both this case and *Haro* seek to represent a class of non-exempt, hourly Walmart store employees who were subjected to COVID-19 screenings, the parties are substantially similar. *See Adoma v. Univ. of Phoenix*, 711 F.Supp.2d 1142, 1147 (E.D. Cal.) ("In a collective action, the classes, and not the class representatives, are compared."). Finally, the COVID-19 theory of liability asserted in the SAC completely overlaps the theory of liability on which the labor claims are based in *Haro*. *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015) ("To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits.").

Accordingly, the Court will dismiss Plaintiffs' first cause of action for overtime violations, second cause of action for wage violations, fourth cause of action for waiting time penalties, and sixth cause of action UCL claim to the extent these claims are premised on Defendants' COVID-19 screening policies and procedures.

### C.   Meal Break Claims

Defendants also ask that the Court dismiss or strike all allegations and claims in the SAC regarding meal breaks as outside the scope of leave to amend granted by the Court. (ECF No. 70, pp. 15-17). Alternatively, Defendants request that the Court stay or dismiss Plaintiffs' meal-break

1   claims under the first-to-file rule because these claims are already being litigated in another

2   putative class action currently pending in the Central District of California, *Hernandez v. Wal-*

3   *Mart Associates, Inc.*, Case No. 5:21-cv-00166-FLA ("*Hernandez*"), which was first filed in state

4   court prior to removal on November 17, 2020. (*Id.*, p. 29; *see also* ECF No. 70, p. 48).

5   Plaintiffs contend that there has always been a claim for meal break violations since this

6   this case was consolidated. (ECF No. 75, pp. 15-17). Plaintiffs' opposition argues that the SAC's

7   additional allegations regarding meal break violations merely clarified the already-existing cause

8   of action under Labor Code 226.7. (*Id.*) At the hearing, Plaintiffs admitted that amendment was

9   necessary to make the meal break allegations explicit. (*See* ECF No.83. p. 40).

10   As with the COVID-19 claims, the Court has decided to construe the new allegations

11   regarding meal break violations in Plaintiffs' SAC as a request for leave to amend.

### 1.   **Bad faith**

12   Here, although Plaintiffs improperly asserted new allegations regarding meal break

13   violations in the SAC without formally seeking leave to amend, there is "no evidence in the

14   record which would indicate a wrongful motive." *DCD Programs, Ltd.*, 833 F.2d at 187.

### 2.   **Undue delay**

16   Defendants were arguably on notice that Plaintiffs had alleged, albeit briefly, Defendants'

17   liability for meal break violations as Plaintiffs' FAC did contain factual allegations that Plaintiff

18   Sousa was required to remain "on duty" during meal and rest periods:

> 33. As a matter of policy, Defendants also require Plaintiffs and Class members to remain on duty during their scheduled shifts, including during rest breaks. Defendants do not compensate Class members for work performed during rest periods, and do not provide Class members premium pay for missed rest breaks. Upon information and belief, Defendants' supervisors and managerial workers know and are aware that non-exempt, hourly workers routinely work through rest breaks and are not provided with premium pay for the missed rest breaks.
>
> 34. **Because these meal and rest periods were on duty, interrupted or missed altogether,** for every shift that Plaintiffs and Class members worked in excess of three and one-half hours, they were denied at least one off-duty, uninterrupted, ten-minute rest period. **For every shift that Plaintiffs and Class members worked in excess of five hours in a day, they were denied an off-duty, uninterrupted, thirty-minute meal period.** And for every shift that Plaintiffs and Class members worked in excess of six hours, they were denied a second off-duty, uninterrupted, ten-minute rest period. **Not only does this entitle Plaintiffs and Class members meal and rest break premium pay that was improperly withheld, but for**

1
2
3

**uncompensated meal periods, this unlawful conduct additional results in thirty minutes of uncompensated work time, each shift.** And [b]ecause Plaintiffs and Class members routinely work in excess of eight hours in a day and forty hours in a week, **this uncompensated mealtime results in both overtime and minimum wage violations.**

4
5
6
7
8

35. As just one of countless examples, during the two weeks between January 7, 2017 and January 20, 2017, **Plaintiff Sousa worked ten shifts, each of which were in excess of 7 hours –sufficient length to entitle him to one meal break, and two rest breaks, each shift.** But Because Plaintiff Sousa was on duty during those breaks and those breaks were subject to interruption at any time, **Plaintiff experienced ten meal break violations, and twenty rest break violations during those two weeks.**

9
10
11
12

(ECF No. 51, pp. 8-9). The Court's own summary of Plaintiffs' FAC included both meal break and rest period allegations. (*See* ECF No. 66, p. 4). However, Defendants' previous motion to dismiss indicates that Defendants did not construe Plaintiffs' FAC as asserting a claim regarding meal break violations. (*See* ECF No. 52, p. 20) (comparing the alleged violations in the FAC with another matter and noting that this case did not contain a meal period cause of action).

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiffs point that Labor Code § 226.7 pertains to both rest period and meal break violations is well-taken, but given that Plaintiffs' "on-duty" theory of liability as to the meal break violations is the same as the rest period violations, the Court finds that Plaintiffs "knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388 (9th Cir. 1990). Further, there have been several iterations of complaints in this case and Plaintiffs have no explanation as to why the meal break allegations were not fully described in any previous complaint. Indeed, at the hearing, Plaintiffs conceded that the relative lack of allegations regarding meal break violations in the FAC compared to the SAC was an "oversight [that] should have been caught earlier." (ECF No. 83, p. 41). Accordingly, the Court finds that this factor weighs against granting leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Additionally, we have held that a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

27
28

### 3.    Prejudice to opposing party

As discussed above, this case is procedurally still in the pleadings stage, and so the Court

finds no prejudice to Defendants based on Plaintiffs' delay in clarifying or otherwise bolstering their allegations regarding meal break violations. *See Calderon*, 2018 WL 4473626 at *5. However, Defendants contend that they will be otherwise prejudiced by having to defend meal break claims in this case as well as in *Hernandez*. As discussed further below, the Court finds that amendment would be futile because the first-to-file doctrine favors dismissing Plaintiffs' meal break claims in this case due to the pending meal break claims in *Hernandez*.

### 4.   Futility of Amendment

Amendment is futile "where the amended complaint would be subject to dismissal." *Saul*, 928 F.2d at 843.

The Court finds that the first-to-file rule provides an alternative reason as to why it would be futile to grant Plaintiffs leave to amend as to the meal break claims. Here, the plaintiffs in *Hernandez* first alleged a cause of action based on Defendant Wal-Mart Associates Inc.'s failure to provide required meal periods in the complaint filed in state court on November 17, 2020. (ECF No. 71, pp. 52-3). Neither Plaintiff Sousa's original complaint nor Plaintiff Castro's original complaint allege any cause of action explicitly based on Defendants' failure to provide meal breaks. (*See Castro*, ECF No. 1; *see Castro*, ECF No. 1-2). Moreover, the consolidated complaint in this action did not contain any reference to meal break violations aside from the night manager subclass allegations regarding Defendants' timekeeping procedures. (*See* ECF No. 29). Plaintiffs did not include any meal break allegations based on the "on-duty" theory of liability whatsoever until filing the amended consolidated complaint (FAC) on August 20, 2021. (ECF No. 51). Accordingly, the chronology of the *Hernandez* action and this action favors application of the first-to-file rule.

Further, the putative class in *Hernandez* is composed of all current and former non-exempt employees who worked in Walmart stores in California beginning November 17, 2017. (ECF No. 71, p. 68). Thus, the parties are substantially similar to one another.

Finally, both this action and *Hernandez* allege that Defendant Wal-Mart Associates Inc. is liable for failing to provide meal breaks by requiring employees to remain on duty during meal break periods. (*See id.*, p. 70; *see* ECF No. 67, p. 12).

Accordingly, granting Plaintiffs leave to amend their complaint to include a meal break claim would be futile because the interest of judicial efficiency and comity favors applying the first-to-file rule.

### E.    Rest Period Claims

Defendants argue that Plaintiffs fail to state a claim for rest period violations. (ECF No. 70, p. 25). According to Defendants' motion to dismiss, Plaintiffs' allegations that Defendants caused Plaintiffs to "remain on duty," or that Plaintiffs' rest periods were "short," interrupted," or even "missed" are merely conclusory. (*Id.*)

First, the Court finds that Defendants have waived this challenge to Plaintiffs' rest period claims. Plaintiffs' original consolidated complaint and the FAC both alleged a cause of action based on Defendants' failure to provide rest periods. (*See* ECF Nos. 29 & 51). Although Defendants challenged this claim in their motion to dismiss the consolidated complaint, (ECF No. 37, pp. 17-18), that motion was later withdrawn, (ECF Nos. 49 and 50), and Defendants did not subsequently raise this challenge in their motion to dismiss the FAC (*see* ECF No. 52).

Federal Rule of Civil Procedure 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2) provides that the defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). And Rule 12(h)(3) enables the court to consider a lack of the subject-matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3). Thus, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to raise a defense based on a failure to state a claim that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial. In other words, if a defense of this kind was available to be raised in an initial Rule 12(b)(6) motion to dismiss and the party failed to raise the defense in that motion, the party may not raise the defense in a second Rule 12(b)(6) motion. *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 984–85 (N.D. Cal. 2017), *aff'd in part, dismissed in part*, 897 F.3d 1125 (9th Cir. 2018); *see also Herron v. Best Buy Stores, LP*, No. 12-cv-02103-GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013)

("[A] series of [Rule 12(b)(6)] motions should not be permitted because that results in delay and encourages dilatory tactics.") (quoted source and internal marks omitted).

Defendants' withdrawn motion to dismiss argued that Plaintiffs' rest period claim should be dismissed for failure to state a claim, (*see* ECF No. 37, pp. 17-18), but Defendants did not raise any challenge based on in their motion to dismiss Plaintiffs' FAC even though Defendants otherwise challenged Plaintiffs' UCL claim to the extent it sought to recover penalties for rest periods on the ground that such restitution was not recoverable under the UCL, (*see* ECF No. 52, p. 16). Accordingly, because Defendants could have challenged Plaintiffs' rest period claims in a 12(b)(6) motion regarding Plaintiffs' FAC, but chose not to, they will not be allowed to do so here.

Second, the Court finds that Plaintiffs' SAC sufficiently alleges a cause of action for failure to provide rest periods. Under the applicable provisions of California law, "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 269 (2016); *see also id.* at 270, ("[A] rest period means an interval of time free from labor, work, or any other employment-related duties. And employees must not only be relieved of work duties, but also be freed from employer control over how they spend their time."). Here, Plaintiffs allege that "[a]s a matter of policy, Defendants also require Plaintiffs and Class members to remain on duty during their scheduled shifts, including during meal and rest breaks." (ECF No. 67, p. 13). Moreover, Plaintiffs further allege that "during the two weeks between January 7, 2017 and January 20, 2017, Plaintiff Sousa worked ten shifts, each of which were in excess of 7 hours – sufficient length to entitle him to one meal break, and two rest breaks, each shift. But [b]ecause Plaintiff Sousa was on duty during those breaks and those breaks were subject to interruption at any time, Plaintiff experienced ten meal break violations, and twenty rest break violations during those two weeks." (*Id.*, p. 13). Plaintiffs' allegations indicate that Defendants did not relieve Plaintiffs of all duties or relinquish control over how Plaintiffs spent their time during the rest period. Accordingly, the Court finds that Plaintiffs have stated a claim for rest period violations. *See Augustus*, 2. Cal. 5th at 269 ("[C]an an employer satisfy its obligation to relieve employees from duties and employer control during rest periods when the employer nonetheless requires its

1   employees to remain on call? The answer, we conclude, is no[.]").

2       **F.       Waiting Time Penalty Claims**

3           Defendants argue that Plaintiffs' derivative claim for waiting time penalties should be

4   dismissed to the extent that claim is based on allegedly unlawful COVID-19 screenings, meal

5   break violations, and rest period violations. (ECF No. 70, p. 27). As discussed above, the Court

6   has not granted Plaintiffs leave to amend as to the COVID-19 screenings and meal break

7   violations. Because the Court finds that Plaintiffs state a claim as to the rest period violations

8   unrelated to COVID-19 screenings, the Court denies Defendants' motion to dismiss Plaintiffs'

9   waiting time penalty claim to the extent that claim derives from rest period violations unrelated to

10  COVID-19 screenings.

        **G.       UCL Claim**

11          Similarly, Defendants argue that Plaintiffs' UCL claim should be dismissed to the extent

12  that claim is based on Plaintiffs' allegations regarding Covid-19 screenings, meal break

13  violations, and rest period violations.[9] (ECF No. 70, p. 27). The Court has not granted Plaintiffs

14  leave to amend as to the COVID-19 screenings and meal break violations. However, the Court

15  denies Defendants' motion to dismiss Plaintiffs' UCL claim to the extent that claim derives from

16  rest period violations unrelated to COVID-19 screenings.

17  **V.     MOTION FOR RECONSIDERATION**

18          The Court will now address Plaintiffs' motion for reconsideration.

19          As background, Plaintiff Castro's First Amended Complaint in *Castro v. Walmart Inc.*,

20  Case No. 2:20-cv-00928-ADA-EPG ("*Castro*"), asserted a class claim against Defendant

21  Walmart, Inc. for failure to provide accurate wage statements in violation of California Labor

22  Code § 226. (*See Castro*, ECF No. 8, pp. 14-15). Walmart moved to dismiss Plaintiff Castro's

23  amended complaint only with respect to the wage statement claim. (*Castro*, ECF No. 9). On

24  August 17, 2020, Judge Mendez dismissed Plaintiff Castro's wage statement claim with prejudice

25  on the basis that the claim was "entirely derivative of [Plaintiff Castro's] off-the-clock claim and

26  ─────────────────
    [9] Defendants also argue that Plaintiffs' UCL claim should be dismissed to the extent it is based on alleged wage
27  statement violations. (ECF No. 70, p. 27, n. 7). Because the Court grants Plaintiffs leave to amend as to the wage
    statement claim, *see supra* pp. 25-26, the Court also denies Defendants' motion to dismiss Plaintiffs' UCL claim to
    the extent that claim derives from wage statement violations unrelated to COVID-19 screenings and meal break
28  violations.

impermissibly seeks a double recovery." (*Castro*, ECF No. 15, p. 4). Relying on *Maldonado v.*

*Epsilon Plastics*, 22 Cal. App. 5th 1308 (Cal. Ct. App. 2018), Judge Mendez wrote:

> As Walmart points out, this Court decided this exact issue in *Krauss v. Wal-Mart, Inc.*, No. 19-cv-00838, 2019 WL 6170770l, at *4 (E.D. Cal, Nov. 20, 2019). Reply, ECF No. 13, at 2. In *Krauss*, the plaintiff brought a Section 226 claim alleging she and other putative class members were required to work off the clock and through meal breaks. *Id.* at *4. In its analysis, the Court relied on *Maldonado v. Epsilon Plastics*, which held that an inaccurate wage claim that "boils down to the proposition that any failure to pay overtime . . . also generates a wage statement injury," is an impermissible double recovery. 22 Cal. App. 5th 1308, 1336 (2018). *Maldonado* clarified that "only the absence of hours worked will give rise to an inference of [Wage Statement] injury," since the absence of wages earned will be remedied by a wage and hour claim. *Id.* at 1337. Finding that plaintiff's claim boiled down to the proposition that failure to pay for time worked off-the-clock also violated wage statement laws, this Court dismissed plaintiff's Section 226 claim in *Krauss*. 2019 WL 6170770l, at *4.
>
> Plaintiff's claim here, like the claim in *Krauss*, is entirely derivative of her off-the-clock claim and impermissibly seeks a double recovery. Plaintiff argues Walmart violated accurate wage statement law by failing to compensate her and putative class members for time spent "off the clock." FAC ¶ 85. Plaintiff contends her claim is based on the absence of "hours worked," and, therefore, entitles her to recovery under Section 226. Opp'n at 5. The Court disagrees. This claim is based on "wages earned" since her allegation for failure to compensate off-the-clock work will be remedied by her wage and hour claim. *Maldonado*, 22 Cal. App. 5th at 1337. This interpretation is supported by the purpose of Section 226, which is "to document the paid wages to ensure the employee is fully informed regarding the calculation of those wages." *Id.* (quoting *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 392 (2016)). Here, it is undisputed that the wage statements accurately reflected the calculation of the wages that were actually paid to Plaintiff. And although those wages did not accurately reflect the "wages earned," Plaintiff cannot also recover for that violation under Section 226. The Court further finds that any attempt to amend this claim would be futile and therefore Plaintiff's itemized wage statement claim is DISMISSED WITH PREJUDICE.

(*Castro*, ECF No. 15, pp. 4-5). Plaintiffs' SAC reasserts this wage statement claim, arguing that under the California Supreme Court's later-issued decision in *Naranjo v. Spectrum Sec. Servs. Inc.*, 13 Cal.5th 93 (2022), Judge Mendez's order was incorrect as a matter of law. (ECF No. 67, pp. 26-28). Plaintiffs argue that the Court "is free to reconsider prior rulings at any time before trial, whether in response to a motion of a party or on its own initiative." (ECF No. 75, p. 22). Moreover, Plaintiffs contend that *Naranjo* confirmed that an injury is presumed when the wage statement provided does not accurately show all wages earned, including wages that were earned but unpaid. (*Id.*, p. 23).

Defendants seek to dismiss Plaintiffs' wage statement claim on the ground that Judge Mendez dismissed the wage statement with prejudice. (ECF No. 70, p. 21). Defendants argue dismissal is appropriate because Plaintiffs fail to allege that they were injured by the inaccurate wage statements. (*Id.*, p. 22). Defendants also argue dismissal is appropriate because Plaintiffs did not obtain leave to amend to reassert the wage statement claim, and that *Naranjo* does not address Article III standing. (ECF No. 77, pp. 7-8). Further, Defendants argue that *Naranjo* is not an intervening change of law because *Naranjo*'s holding only indicates that "failure to report premium pay for missed breaks can support monetary liability under section 226," whereas Judge Mendez's order dismissed Plaintiff Castro's wage statement claim because it was derivative of the wage and hour claims based on time spent off-the-clock in security bag checks. (ECF No. 84, p. 2 (citing *Naranjo*, 13 Cal. 5th at 121)). Moreover, Defendants contend that *Maldonado* has not been overruled. (ECF No. 84, p. 3).

### A.    Motion for Reconsideration Legal Standards

A district court has inherent procedural power to reconsider, rescind, or modify an interlocutory order for sufficient cause. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal citations omitted) (affirming district court's recission order regarding defendant's motion to dismiss). Generally, reconsideration of a prior order is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (describing factors warranting reconsideration under Rule 59(e)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). "A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citing *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

In the Eastern District of California, a motion for reconsideration may be brought under Local Rule 230(j), which provides that such a motion must set forth the material facts and

circumstances, including:

> (1) when and to what Judge or Magistrate Judge the prior motion was made;
>
> (2) what ruling, decision, or order was made thereon;
>
> (3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and
>
> (4) why the facts or circumstances were not shown at the time of the prior motion.

L.R. 230(j)(1)-(4).

### B.     Discussion

Here, the Court finds there has been an intervening change in controlling law warranting reconsideration.

On May 23, 2022, the California Supreme Court issued its decision in *Naranjo v. Spectrum Sec. Serv., Inc.*, 13 Cal.5th 93 (2022). In *Naranjo*, class plaintiffs alleged that defendant failed to provide premium pay for missed meal breaks and also failed to report that premium pay on plaintiffs' wage statements. *Id.* at 102. The defendant in *Naranjo* argued that "it cannot not be liable for violating Labor Code section 226 based on failure to report missed-break premium pay on employee wage statements because these amounts were not actually paid, but were instead (illegally) withheld, and nothing in the statute requires that an employer report amounts not paid during a pay period." *Id.* at 119. The Supreme Court found that "section 226 does not require employers to report only those amounts it deigns to pay; rather, it requires an employer to accompany 'each pay of wages' with 'an accurate itemized statement' specifying . . . all amounts earned and now owing, not just those amounts actually paid." *Id.* "A statement that conceals amounts earned, on the ground that they also were not paid, is not an accurate statement, and it does not comply with the statute." *Id.* The *Naranjo* court rejected the defendant's reliance on *Maldonado*:

> [Defendant] looks to case law to support its unlikely reading of Labor Code section 226 but finds no help there. Though the Court of Appeal in this case agreed with [defendant] — incorrectly — that missed-break premium pay cannot constitute wages, the court still recognized that an itemized wage statement that "omits gross and net 'wages earned' " would run afoul of Labor Code section 226 's requirements. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 474, 253 Cal.Rptr.3d 248.) The same is true of *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 232 Cal.Rptr.3d 461 (*Maldonado*), which [defendant] reads as establishing that only paid amounts need be reported. In *Maldonado*, the Court of Appeal addressed a claim that the employer had misreported overtime hours as regular

hours and failed to report the corresponding overtime premiums as wages. Contrary to [defendant's] view, the court in *Maldonado*, too, recognized that "[w]age statements should include the hours *worked* at each rate and the wages *earned*" — not just wages actually paid. (*Id.* at p. 1336, 232 Cal.Rptr.3d 461.) The court denied recovery under Labor Code section 226 not because employers are permitted to omit earned but unpaid wages but because the plaintiff employees could not show they were injured, under section 226's specific definition of injury, by the particular wage statement inaccuracies there at issue. (*Maldonado*, at pp. 1334–1337, 232 Cal.Rptr.3d 461; see Lab. Code, § 226, subd. (e).)

Leaving aside whether *Maldonado*, *supra*, 22 Cal.App.5th 1308, 232 Cal.Rptr.3d 461 correctly determined that no injury could be shown on the facts before it, no similar shortcoming is present here. The trial court found that Spectrum's employees had "clearly suffered an injury since they could not determine from the wage statements the correct wages to which they were entitled."

*Id.* at 119-120.

In *Maldonado*, plaintiffs asserted an inaccurate wage statement claim, which was based solely on plaintiffs' successful overtime claim. 22. Cal.App.5th 1308, 1334. The trial court in *Maldonado* found that plaintiffs suffered an injury from the inaccurate wage statements because they were not paid all overtime due. *Id.* at 1334-5. On appeal, defendants argued that the injury caused by the failure to pay overtime flowed from defendants' illegal alternative work week schedule, and not from defendants' failure to provide accurate wage statements. *Id.* at 1335. The *Maldonado* plaintiffs argued injury was presumed under the wage statement statute, which provides that an employee is deemed to suffer injury if an employer fails to provide certain categories of information, including "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee," Cal. Lab. Code § 226, subd. (e)(1); subd. (a)(9). *Id.* at 1335-6. Because the alternative work week schedule meant that plaintiffs legally worked four hours of overtime versus the two hours that were recorded by the wage statements, plaintiffs argued that that they were presumedly injured under the wage statement statute. *Id.* at 1336. The *Maldanado* defendants argued this interpretation would mean that "*any* failure to pay overtime at the appropriate rate *also* generates a wage statement injury justifying the imposition of wage statement penalties—an apparent unintentional double recovery." *Id.* (italics in original). The *Maldonado* court agreed, finding that the statutory language differentiated between "hours worked" and "hours earned":

The difference, we believe, is to account for precisely this situation—where at the time the work was performed, the *work was done* and paid for *at a particular rate*, but it was subsequently determined that the employee has actually *earned* the right to additional compensation. Wage statements should include the hours *worked* at

each rate and the wages *earned*. In a perfect world, the first numbers will calculate out to the second. But when there is a wage and hour violation, the hours worked will differ from what was truly earned. But only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wage earned* will be remedied by the violated wage and hour law itself, as is the case here.

*Id.* at 1336-7 (italics in original).

Since *Naranjo*, courts have considered the extent to which *Naranjo* overruled *Maldonado* or otherwise implicitly acknowledged a viable claim for wage statement violations deriving from rest period violations. In *Lingle v. Centimark Corporation*, the district court analyzed whether plaintiffs derivative wage statement claim based, in part, on unpaid meal and rest breaks presented impermissible double recovery:

Last year, however, the California Supreme Court held that "extra pay for missed breaks" are "wages that must be reported on statutorily required wage statements" under section 226 of the Labor Code. *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 102 (2022). Although it disagreed with arguments the Court of Appeal had found persuasive in *Maldonado*, *see id.* at 119, the state Court distinguished *Maldonado* as a case about the absence of an injury, not misreported wages, *see id.* at 120. The state Court did not address whether the theory of injury in *Maldonado* was valid, however, because the employee plaintiffs in *Naranjo* had "clearly suffered an injury." *Id.* Under section 226, an "injury has occurred whenever the employee cannot easily determine ... rates of pay and all hours worked at each rate." *Id.* (citation and marks omitted). As another judge of this court recently explained, the California Supreme Court's decision in *Naranjo* "eliminates the anticipated defense that, as a matter of law, non-payment of meal and rest break premiums cannot form the basis of derivative claims" under section 226. *Almanzar v. Home Depot U.S.A., Inc.*, No. 20-0699, 2022 WL 2817435, at \*12 (E.D. Cal. July 19, 2022). In that way, the California Supreme Court's decision in *Naranjo* "recognizes that *Maldonado* never supported that interpretation [of section 226] in the first place." *Id.*

Given the potential conflict between *Maldonado* and *Naranjo*, this court must "approximate state law as closely as possible." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)). The decisions of a state's highest court are binding. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). In the absence of a controlling decision by the state's highest court, a federal district court must follow any relevant decisions by the state's intermediate appellate courts "unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

On the one hand, the California Supreme Court has not decided expressly whether derivative meal and rest break claims are viable as a matter of law under section 226(a) of the Labor Code. The Court of Appeal's decision in *Maldonado* suggests they are not, and *Maldonado* has not formally been overruled. On the other hand,

however, the California Supreme Court's decision in *Naranjo* implies strongly that derivative meal and rest break claims are viable. Under *Naranjo*, an "injury has occurred whenever the employee cannot easily determine certain required information" from a wage statement, such as hours worked and amount due. 13 Cal. 5th at 120. For that reason, the California Supreme Court would likely disagree with Centimark that derivative claims wrongfully allow double recoveries. *See* Mot. at 10. Otherwise that Court would have barred the claim at issue in *Naranjo* as duplicative. Because Lingle's paystubs did not accurately itemize the total hours worked, the state Court would most likely conclude Lingle was deprived of "information needed to evaluate whether the payment is correct." *Naranjo*, 13 Cal. 5th at 120. Centimark cites no case decided after *Naranjo* suggesting otherwise, nor has this court located any such case.

In short, *Naranjo* is "convincing evidence" that the California Supreme Court would conclude Lingle's fifth claim does not seek an impermissible double recovery. *Ryman*, 505 F.3d at 994. The court denies the motion to dismiss claim five.

No. 2:22-cv-01471-KJM-JDP, 2023 WL 297376, at * 4 (E.D. Cal. April 17, 2023). Similarly, in *League v. Clayco, Inc.*, the district court found that *Naranjo* "makes clear" that the Labor Code's general definition of unpaid wages "includes premiums for missed meal and rest periods." No. 2:22-cv-00503-JAM-DB, 2023 WL 1070622, at * 1 (E.D. Cal. Jan. 26, 2023, J. Mendez) (applying *Naranjo*'s definition of premium pay to plaintiff's claim under California Labor Code § 218.8, which allows for actions against a direct contractor or subcontractor for unpaid wages); *see also Betancourt v. OS Restaurant Services, LLC*, 83 Cal.App.5th 132, 139-40 (finding that "*Naranjo*'s holding that premium pay for missed breaks constitutes wages and must be reported on wage statements" fully justified legal basis of attorney fee award for successful rest period claim).

The Court agrees with the reasoning in *Lingle* that "the California Supreme Court's decision in *Naranjo* implies strongly that derivative meal and rest break claims are viable." 2023 WL 297376, at * 4. Accordingly, there has been an intervening change in controlling law warranting reconsideration of Judge Mendez's ruling that Plaintiff Castro's wage statement claim seeks impermissible double recovery.

Taking into account that new authority, the Court finds that Plaintiff Castro's wage statement claim may proceed. The Court now must consider whether Plaintiffs should be granted leave to amend their consolidated complaint.

//

### 1.   **Bad Faith**

Here, Plaintiffs' contention that *Naranjo* presented new grounds for reconsideration of Judge Mendez's prior order was warranted.

### 2.   **Undue Delay**

Defendants argue that Plaintiffs have waited too long to move for reconsideration of Judge Mendez's August 2020 order. (ECF No. 85). Defendants highlight the fact that Plaintiffs did not seek any kind of reconsideration by this Court of Judge Mendez's order until Plaintiffs reasserted the wage statement claim in the SAC in March 2023. (*Id.*) Further, Defendants include the declaration of Defendants' counsel, Mr. Wrosch, which states that Plaintiffs' counsel, Mr. Bradley, sought to stipulate to the wage statement claim on October 27, 2022, which was before Plaintiffs filed the FAC. (ECF No. 85).

While the Court acknowledges that Plaintiffs delayed several months, such delay was not undue given the stage of the case. Moreover, as discussed further below, this delay has not prejudiced Defendants.

### 3.   **Prejudice to Defendants**

The relatively early procedural posture of this case is well known to the Court and the parties. Some delay in this case has been outside the parties' control or due to the parties' desire to consolidate Plaintiff Sousa's case with Plaintiff Castro's case. Accordingly, the Court finds that Defendants will not be prejudiced by the addition of a revived wage statement claim. *See Luna v. New Hampshire Ball Bearings, Inc.*, No. 2:18-cv-10755-AB (JCx), 2022 WL 17096707, at *5 (C.D. Cal. Aug. 9, 2022) (allowing leave to add derivative wage statement claim based on hour and meal period claims as "the same evidence needed to prove the claims for minimum wage, overtime, and meal period violations claims would be the same essential evidence needed to prove the Section 203 claim, *e.g.*, time sheets, wage statements, and putative class lists").

### 4.   **Futility**

Section 226(a) requires an employer to issue "an accurate itemized statement" showing, among other things, the gross wages earned, and the total hours worked by a non-exempt employee. Cal. Labor Code § 226(a). To state a claim for failure to provide accurate wage statements, a plaintiff must plead factual allegations sufficient to raise a plausible inference that

the employer knowingly and intentionally failed to include at least one of the required items of 226(a), thereby causing injury. *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2015 WL 5072039, ay *5 (N.D. Cal. Aug. 27, 2015) (citing Cal. Labor Code §226(a), (e)). However, a derivative wage statement claim sufficiently pleads factual allegations that defendants "knowingly and intentionally" failed to provide accurate wage statements by pleading the predicate claims, i.e., that that defendant "knew about its failure to pay rest period premiums and made it a policy and practice to exclude them in the wage statements." *Hang v. Old Dominion Freight Line, Inc.*, No. 5:21-cv-00287-JWH-KK, 2022 WL 19263259, at *5 (C.D. Cal. Aug. 1, 2022).

Here, the Court has found that Plaintiffs have sufficiently alleged a rest period claim based on Defendants' policy to willfully deprive or fail to provide Plaintiffs with rest periods. Moreover, Plaintiffs also proceed on viable claims for minimum wage and overtime violations based on Defendants' failure to compensate for all hours worked and earned. Because Plaintiffs' wage statement claim is entirely derivative of the wage and hour violations, the Court finds that amendment would not be futile.[10]

## VI.   CONCLUSION AND ORDER

Based on the foregoing, IT IS ORDERED that:

1.   Defendants' motion to dismiss (ECF No. 70) is GRANTED IN PART, and DENIED IN PART as follows:

   a.   The Court will not grant Plaintiffs leave to amend to include claims regarding COVID-19 screenings or meal break violations. Accordingly, Defendants' motion is granted to the extent that Defendants seek dismissal of any claims regarding COVID-19 policies or procedures and meal break violations.

   b.   Defendants' motion to dismiss is denied to the extent that it seeks dismissal of Plaintiffs' rest period claims and any derivative claims based on rest period

---

[10] Defendants also ask for leave to file another Rule 12 motion as to Plaintiff Castro on the basis that it is time barred. (ECF No. 84, p. 6; EC No. 70, p. 21 n.5). Defendants do not present a full argument in either the motion to dismiss Plaintiffs' SAC or in their opposition to Plaintiffs' motion for reconsideration regarding the wage statement claim. Given the multiple Rule 12 motions in this case, the Court declines to permit an additional motion. However, Defendants may assert this, or any other defense, in the course of litigation including a motion for summary judgment.

violations.

2.  Further, pursuant to the parties' stipulation, Plaintiffs' seventh cause of action for statutory penalties under California's Private Attorneys General Act is DISMISSED.

3.  Defendants' request for judicial notice (ECF No. 71) is GRANTED.

4.  Plaintiffs' motion for reconsideration is GRANTED as follows:

    a.  The Court finds that an intervening change in controlling law warrants reconsideration of Judge Mendez's prior order dismissing Plaintiff Castro's wage statement claim and that Plaintiff Castro's wage statement claim should be allowed to proceed;

    b.  Further, Defendants' motion to dismiss Plaintiffs' claim for wage statement violations and Plaintiffs' UCL claim to the extent that claim is based on wage statement violations is denied on this basis.

5.  Plaintiffs' sixth cause of action for violations of California's Unfair Competition Law is DISMISSED to the extent that Plaintiffs seek injunctive relief.

6.  This case now proceeds on Plaintiffs' Second Amended Complaint as follows, except as related to COVID-19 policies or procedures and meal break violations:

    a.  Plaintiffs' first cause of action for state law overtime violations;

    b.  Plaintiffs' second cause of action for state law minimum wage violations;

    c.  Plaintiffs' third cause of action for state law rest period violations;

    d.  Plaintiffs' fourth cause of action for waiting time penalties under state law;

    e.  Plaintiffs' fifth cause of action for state law wage statement violations; and

    f.  Plaintiffs' sixth cause of action to the extent Plaintiffs seek restitution, declaratory relief, or any available equitable relief except for injunctive relief under the UCL.

\\\
\\\
\\\
\\\
\\\
\\\

7. The parties are reminded to submit an additional joint status report regarding further scheduling within fourteen days following the date of this order. (*See* ECF No. 94).

IT IS SO ORDERED.

Dated:   **August 16, 2023**            /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE